City of Wellington v. Wellington Township.

- - - - - - -

THE CITY OF WELLINGTON v. WELLINGTON TOWNSHIP *et al.*, IN SUMNER COUNTY.

| 46 | 213 |
| 58 | 613 |
| 46 | 213 |
| 62 | 840 |
| 46 | 213 |
| 66 | 258 |

1. TOWNSHIP, *Divided — Interest in Public Property.* When small portions of an original township are from time to time detached to aid in the formation of new townships, the portions of the original townships thus detached, in the absence of legislative provisions to that effect, retain no interest in or claim to the public property of the original township not situate in any of the portions detached.

2. LOTS, *Conveyed to Build Township Hall — Deed, Construed.* A deed conveying town lots to a municipal township, its successor or successors, for the consideration of "$1 and the enhanced value of lots that are owned by the grantor that lie in the vicinity of the herein-granted lots," for the express purpose of erecting a township hall, vests the absolute title to the lots in the township, but places a limitation on the manner of the use of said lots.

3. —— —— *Control of Public Property.* When, under such a conveyance, the township raises money by taxation and erects a town-hall

on the lots, and the hall is used solely and distinctly for public pur-
poses connected with the administrative powers of the municipality,
it is public property, subject to legislative control, and not the pri-
vate property of the corporation under a proprietary power.

4. CITY, *Formed from Township — Rights in Town-Hall.* When a city
of the second class is created out of territory wholly within the lim-
its of a municipal township, the title to two town lots in said city,
which were conveyed by the owner thereof to such municipal town-
ship, its successor or successors, when said city of the second class
was a city of the third class and a part of said township, for the ex-
press purpose of erecting thereon a township hall, and a township
hall had been erected thereon by the expenditure of money raised
by taxation on all the property of the township, vested in the city
of the second class as the legal successor of the township. The case
of *Board of Education v. School District,* 45 Kas. 560, distinguished.

### *Error from Sumner District Court.*

ACTION brought by the *City of Wellington* to quiet its title
to certain real estate. Each of the defendants demurred to
the plaintiff's petition, on the ground that it did not state facts
sufficient to constitute a cause of action. Trial at the Novem-
ber term, 1887, Hon. R. B. SHEPARD, judge *pro tem.,* presid-
ing. The court sustained the several demurrers, and the *City*
brings the case to this court. The material facts are stated in
the opinion.

*C. Everest Elliott,* city attorney, and *McDonald & Parker,*
for plaintiff in error.

*James A. Ray, Haughey & McBride,* and *L. B. Kellogg,*
for defendants in error.

*George, King & Schwinn,* for the Township of Wellington,
one of the defendants in error.

Opinion by SIMPSON, C.: The material facts are, that on
or before the 5th day of September, 1873, all the territory
embraced in the present city of Wellington, the township of
Wellington, and a portion of that embraced in each of the
other defendant townships, constituted one single township,
known as "Wellington township;" that on that day, one
Henry H. Davidson, being the owner in fee-simple of certain

real estate, conveyed to the said township of Wellington lots
11 and 12, in block 53, in the original town (now city) of
Wellington; that a part consideration for said conveyance
was the agreement of the township of Wellington to build
upon said lots a township hall by the 1st day of June, 1874;
that after an extension of time, by mutual agreement, the hall
was built, and the title to the lots became absolute in the
township of Wellington. On the 24th day of February,
1874, a portion of the original township of Wellington was
detached and made a part of the township of Jackson. On
the 22d of February, 1876, another portion was detached
and made a part of the township of Seventy-six. On the
3d day of January, 1876, another portion was detached and
made a portion of the township of Osborn. On the 30th day
of August, 1879, another portion was detached and made a
part of the township of Downs. On the 14th day of Feb-
ruary, 1880, the city of Wellington, which before that time
had been a city of the third class, was incorporated as a city
of the second class, but was composed entirely of territory
that had belonged to the township of Wellington. The town-
ship hall was included within the limits of the city of Well-
ington as a city of the second class, and has been used by
the city of Wellington, ever since its organization as a city
of the second class, as a town-hall. The deed of convey-
ance from Davidson to the township of Wellington recites
that it is made "in consideration of the sum of $1 and the
enhanced value of lots that are owned by the said grantor
that lie in the vicinity of the herein-granted lots, to the said
grantee, for the express purpose of erecting a township hall
on herein-described real estate." The lots are granted "to
the township of Wellington, its successor or successors." The
lots are described as being in the late town, now city, of
Wellington. At the date of this conveyance Wellington was
a city of the third class, and a part of Wellington township.
This action was commenced by the city of Wellington, a city
of the second class, alleging that the city of Wellington was
in the actual possession and occupancy of said property, and

was the owner in fee-simple thereof; that the defendants each and all claimed to have an interest therein, and that such claims constituted a cloud on the title of the city, etc.   It ought to have been stated at the proper place, that the costs and expenses incurred in the purchase and improvement of these lots were contributed by the tax-payers of Wellington township as it was constituted on the 5th day of September, 1873.   Each of the defendants demurred to the petition of the city of Wellington, on the ground that it did not state facts sufficient to constitute a cause of action, because it did not show that the city was the owner of the property in controversy.   These demurrers were sustained by the trial court, and the questions presented by them are here for review.

I.   Some preliminary questions were discussed by counsel.   It was claimed that there was not attached to the petition in error any authenticated transcript containing the judgment or final order of the court, and hence, that the petition in error ought to be dismissed.   The clerk of the district court of Sumner county attaches to the petition and exhibits, to the bond for costs, to the præcipe, to the summons, to the demurrers, and to the judgment, a separate certificate under the seal of the court, stating that each of these papers is a true, full and complete copy of the originals as they remain on file in his office in the foregoing case, the same being duly entitled.   The better and the usual practice is for the clerk to attach at the end of a transcript a general certificate to the effect that the foregoing is a true, full and complete transcript of the pleadings and judgment; but, as each pleading and the judgment are properly certified, we have no doubt but that in this particular case, being a judgment on demurrer, and the only necessary papers being the pleadings and judgment showing the exception to the ruling, the transcript is sufficient to review the ruling below.

It is also insisted that, as the record presented shows only that this case came on for trial before Hon. R. B. Shepard, a member of the bar of this court, and does not show that he was selected in any manner known to the law as a judge *pro*

*tem.* for the trial of this cause, this court will not review the proceedings. The record does recite this: "And the hearing and trial heretofore having been submitted to the said R. B. Shepard, Esq., *by and with the consent of all of said parties, plaintiff and defendants,* who appeared herein by their respective counsel." Now, this is one of the modes prescribed by statute for the selection of a *pro tem.* judge. (Gen. Stat. of 1889, ¶ 1966.) It is true that the record does not designate the attorney selected to try the case as judge *pro tem.,* but it does recite that he is a member of the bar of that court, and that he was agreed upon to try the cause by all the parties in interest, and that the regular judge was disqualified to try the case because he had been of counsel. Apart from all this, no question was raised in the court below as to the power or authority of the judge *pro tem.* to hear the case, but all parties consented thereto, and therefore such question cannot be raised for the first time in this court. This is expressly decided in the case of *Higby v. Ayres,* 14 Kas. 331, and this is a stronger case, because this record affirmatively shows that the judge of the district court of Sumner county was disqualified.

II. The principal question to be determined by the demurrers filed to the petition in this case is, When territory is detached from an original municipal township to aid in the formation of four additional townships, and when a city of the second class is created within the remaining limits of the original township, how do these detachments and this creation affect the title to lots and a township hall erected thereon, owned by the original municipality, and built by taxes levied on the property of the original township, but situated within the limits of such city of the second class, and within its limits when it was a city of the third class, and a part of the original municipality? So far as the briefs of counsel and our own research are concerned, there is no statutory rule to determine this controversy, unless it be chapter 62 of the Laws of 1889. In the case of *Laramie Co. v. Albany Co.,* 92 U. S. 307, de-

cided in 1875, Mr. Justice Clifford, speaking for a unanimous court, says:

"Sixty-five years before the decree under review was rendered, a case was presented to the supreme court of Massachusetts, sitting in Maine, which involved the same principle as that which arises in the case before the court. Learned counsel were employed on both sides, and Parsons was chief justice of the court, and delivered the opinion. First he adverted to the rights and privileges, obligations and duties of a town, and then proceeded to say: 'If a part of its territory and inhabitants are separated from it by annexation to another, or by the erection of a new corporation, the former corporation still retains all its property, powers, rights, privileges, and remains subject to all its obligations and duties, unless some new provision should be made by the act authorizing the separation.' (*Windham v. Portland*, 4 Mass. 389.) Decisions to the same effect have been made since that time in nearly all the states in the union where such municipal subdivisions are known, until the reported cases have become quite too numerous for citation. Nor are such citations necessary, as they are all one way, showing that the principle is one of universal application. Concede its correctness, and it follows that the old town, unless the legislature otherwise provides, continues to be seized of all its lands held in a proprietary right, continues to be the sole owner of all its personal property, is entitled to all its rights of action, is bound by all its contracts, and is subject to all the duties and obligations it owed before the act was passed effecting the separation."

This was said in a case wherein Laramie county brought an action against Albany and Carbon counties to compel them to contribute their just proportion to an indebtedness incurred when these two counties were a part of Laramie county, they having been established wholly out of territory included within the limits of Laramie county. This case is cited with approbation by this court in the case of *Comm'rs of Sedgwick Co. v. Bunker*, 16 Kas. 498, Mr. Justice VALENTINE saying:

"Now in all cases, as we understand the law, where the legislature divides a county without making any legal provision for a division or apportionment of the debts or property thereof, the old county pays all the debts and takes all the property."

Territory was detached from the township of Wellington as follows: On the 24th day of February, 1874, the north half of congressional township No. 33, range 1 west, was detached and made a part of Jackson township. On February 22, 1876, the south half of township 31, range 1 west, was detached and made a part of the township of Seventy-six. On January 3, 1876, the east half of township No. 32, range 2 west, was detached and made a part of the township of Osborn. On the 13th day of August, 1879, the northeast quarter of township 33, range 2 west, was detached and made a part of the township of Downs. At and during the times when these various parts of territory were detached from the township of Wellington, and aided in the formation of other townships, § 3 of chapter 142, Laws of 1873 was in force, which provided:

"All real estate heretofore and hereafter detached by a change of boundary lines from any county or township wherein any bonds shall have been previous to such change of boundary lines legally authorized and issued by a vote of the electors of such county or township, shall be subject to taxation for the payment of such bonds and the interest thereon in the same manner as though no such change of boundary lines had been made."

This is still the law. (See ¶ 439, Gen. Stat. of 1889.) It is alleged in the petition in this case, and of course admitted by the demurrers, that the money for the purchase of the lots and for the erection of the town-hall was raised by taxation; and it is not alleged or shown that any bonds have been issued or were now outstanding. Under the cases of *Comm'rs of Sedgwick Co. v. Bunker*, 16 Kas. 498; *Chandler v. Reynolds*, 19 id. 249; *Craft v. Lofinck*, 34 id. 369, this section of chapter 142 of the Laws of 1873 only applies in cases where bonds have been legally issued before a change of county or township boundaries. The fair implication arising from this legislative action is that, when a part of a township is detached, it is relieved of all obligations of the municipality from which it is taken, except in the simple instance of bonds having been legally issued when it was a part of that township. No bonds

1. Division of township; interest in public property.
having been issued by Wellington township, the principle that, unless by the act authorizing separation some division of property is declared, the original municipality retains all the property, applies in this case in favor of Wellington township, and the townships of Seventy-six, Osborn, Downs and Jackson have no interest in or claim to any part of the lots and township hall in controversy.

Counsel for the defendants in error insist that, as this is an equitable action, the plaintiff in error is in no attitude to claim relief, because, among other reasons, the property is public property, and their clients have equities in it to the extent of their contributions to the purchase and improvements thereof. A very brief statement will dissipate these foggy mists of error. Counsel represent separate and distinct municipalities, and the petition shows that small portions of the territory embraced within the original township of Wellington were at various times annexed to the townships of Seventy-six, Osborn, Downs, and Jackson. Possibly these townships were created after this transaction; but be that as it may, it is perfectly clear that by no possibilities could these organizations, as public corporations, have any equitable claims on the property in controversy, because some of the land and a few of the people of their respective townships at one time were situate and resided within the limits of Wellington township, and contributed by taxation to the improvement of it. It is true that the people in these townships who paid a part of the taxes might by such payment have acquired a moral obligation against the original township, which by legislative action might have ripened into a legal demand, but it would accrue to these people, and not to the municipalities. So that neither a fair application of legal principles nor a generous appeal to equitable considerations gives these municipalities any claim or interest in the property. This conclusion is abundantly sustained by numerous adjudicated cases, and, while there may be found a few cases that seem to hold a contrary doctrine, the very great weight of authority establishes the principle applied. See,

among other cases, those of *Town of Depere v. Town of Belle-vue*, 31 Wis. 120; *Town of Milwaukee v. City of Milwaukee*, 12 id. 93; *Crawford Co. v. Iowa Co.*, 2 Chand. 14; *Hampshire v. Franklin*, 16 Mass. 76; *North Yarmouth v. Skillings*, 45 Me. 133; *Veazie v. Howland*, 47 id. 127.

III. This narrows the controversy down to the city of Wellington and the township of Wellington, and invokes the application of other principles. It will be observed that at the time the town of Wellington became a city of the second class, it was composed of territory that had been exclusively within the boundaries of the township of Wellington, after certain portions of that township had been annexed to the other townships, and constituted a part of Wellington township. This inquiry arises on this state of facts: When a city of the second class is created out of the territory of a municipal township, and the public property of the township is situated within the boundaries of such city, which municipality owns the property? In the absence of legislative regulation, the presumption is that the legislature did not consider that any regulation was necessary. (*Mount Pleasant v. Beckwith*, 100 U. S. 514.) It is said in this case:

"Where there is no legislation on the subject, the old corporation owns all the public property within its limits, and is responsible for all debts of the corporation contracted before the separation, nor has the new municipality any claim to any portion of the public property except what falls within its boundaries, and to that the old corporation has no claim whatever," and cites in support the cases of *Laramie Co. v. Albany Co.*, 92 U. S. 307; and *Bristol v. New Chester*, 3 N. H. 524.

It is further said, in the case of *Mount Pleasant v. Beckwith*, supra —

"That it is not a case where the legislature creates a new town out of the territory of an old one, without making any provision for the payment of the debts antecedently contracted, as in that case it is settled law that the old corporation retains all the public property *not included within the limits of the new municipality*, and is liable for all the debts contracted by it before the separation took place."

The case of *School Township of Allen v. School Town of Macy*, 109 Ind. 559, was one in which prior to the incorporation of the town of Macy, it constituted a part of the township of Allen, and constituted a greater part of School District No. 1 in that township. The school township had purchased a tract of land, received a conveyance therefor, and had erected a school-house thereon. When the town of Macy was incorporated, this land, and the school-house thereon, which had been used exclusively for school purposes, were situated wholly within the territorial limits of said town of Macy; but the school township of Allen was claiming the exclusive control and ownership of said school-house, and the land upon which it was situated, asserting the right to sell and dispose of it without the consent of the school town of Macy. The school town of Macy commenced an action to quiet its title to said land and school-house, and to require the township to convey said tract of land to it for school purposes. In Indiana an incorporated town is as much a distinct municipal corporation for school purposes as is a civil township. The court say, in affirming a decree of the court below in favor of the town of Macy:

"There cannot be, at the same time, within the same territory, two distinct municipal corporations exercising the same powers, jurisdictions, and privileges; [citing Dillon on Municipal Corporations, 3d ed., § 184.] When the town of Macy, was incorporated and was organized as a school corporation, it became the successor of the school township of Allen in all educational matters connected with the public schools within its territorial limits, and, as a necessary consequence, the jurisdiction which said school township had theretofore exercised was thereafter entirely excluded. It was held in the case of *School District No. 1 v. Richardson*, 23 Pick. 62, that when a township abolishes its existing school districts and forms new ones, the title to the school-houses then in existence vests in the new districts in which they happen to fall. This case was followed in *School District No. 6 v. Tapley*, 83 Mass. 49, and this authority has been expressly or impliedly recognized in *Carson v. The State*, 27 Ind. 465; *The State, ex rel., v. Shields*, 56 Ind. 521; and *School Town of Leesburg v. Plain*

*School Township*, 86 Ind. 582. These conclusions were in accordance with the general principles governing the use, occupation and control of public property situate within the territory which has been transferred to a new governmental jurisdiction."

In the case of *City of Lynn v. Inhabitants of Nahant*, 113 Mass. 433, it is expressly decided that lands held by a town by virtue of being within its municipal boundaries, *necessarily*, upon the division of the town by the general court, were held in like manner by the town within whose limits they fell upon division, unless the general court expressly provided otherwise.

One of the earliest, and possibly the earliest, cases which directly involved this question is *North Hempstead v. Hempstead*, 2 Wend. 110. The town of North Hempstead was created out of the territory of the town of Hempstead, which owned certain land, and the question in dispute was as to the ownership of that part of the land that fell within the limits of the new town of North Hempstead, and the unanimous opinion of the court of errors was that the new town was entitled to hold in severalty the public property that fell within its limits.

We have carefully examined all the cases cited in both briefs, and some in addition thereto. A very great majority of these cases are devoted to a discussion and application of the principle that when a part of a township is annexed to another, or is detached to form a new township, the old municipality retains the property, and is liable for the debts, unless other provision is made by the act of separation. Very few reported cases adjudicate the question as to which municipality is entitled to the public property that falls within a city created out of a township, because, as a rule, the legislature has made provision for an equitable division. The strongest case that can be found in the books in favor of the defendant in error (the township of Wellington) is that of *Parish of West Carroll v. Gaddis*, 34 La. Ann. 928; but, like many of the other cases, the point embraced in the controversy was not precisely the same as here, but the general observations of the court in the course of the argument were to the effect that the

township of Wellington would retain all the property. We have examined the cases of *Board of Health v. East Saginaw*, 45 Mich. 257, and find it very largely controlled by statutory considerations. The case of *People v. Trustees*, 86 Ill. 613, is one in which the president of the board of education of the city of Chicago claimed that, because the boundaries of the city had been extended so as to include a small portion of a country school district, they were entitled to a part of the revenues arising from school section No. 16, that remained wholly within the limits of the country school district, and his claim was denied. The later case of *McGurn v. Board of Education*, 24 N. E. Rep. 529, (decided in May, 1890,) turns entirely upon statutory provisions. It may be fairly said that, in every case in which the question was a controlling one, and it was free from statutory control, it has been held that in cases of a new and different municipality carved out of a municipal township, the public property falling within its limits belongs to the new.

IV. We take note of the distinction made in the brief of counsel for the township of Wellington between the governmental character of a municipality and its proprietary powers. In its governmental character, the corporation is made by the state a local depository of certain limited and prescribed political powers, to be exercised for the public good of the state rather than for itself. In its proprietary character, the theory is that the powers are not supposed to be conferred chiefly from considerations connected with the government of the state at large, but for the private advantage of the compact community which is incorporated as a distinct legal personality or corporate individual. This distinction is well founded, and upon it is based the doctrine that, as to property acquired under such powers, and as to contracts with reference thereto, the corporation is not to be regarded as a public one to the extent that the legislative power over it with reference to such property is omnipotent. In the long list of authorities cited by Judge Dillon, in his work on Municipal Corporations, sustaining this distinction, we do not find that it exists any-

where, except in cities, and from its nature it must only apply to large cities, and in these it seems to be confined to property held by cities not absolutely necessary for the transaction of the public business, but for revenue, improvement, and development, such as bridges, wharfs, and structures of that character.

It seems clear to us that the property in question was used solely and distinctly for a public purpose, and was a necessity

3. Town-hall, public, not private, property. of the municipal existence, because it had to have a place at which to transact the public business, and was not of that character that fell within the proprietary power of the township. Neither can it be claimed that the township of Wellington held this property in trust

2. Lots conveyed to build township hall; title. for specific uses. But the conveyance by Davidson to the township contained a limitation of the manner in which the property should be used. (*Curtis v. Board of Education*, 43 Kas. 138.) Neither do we think that the possession and use of the lots and the building thereon by the city of Wellington for public purposes would depart from the express purpose of the conveyance so as to create any forfeiture of the estate. A city of the second class, for its mayor, common council, police judge, marshal and other officers, has more use for a town-hall than a township can have, and the use by both is so similar that it does not appear that there is any substantial departure from the literal terms of the grant. In fact the conveyance expressly provides for the same use, both by the township and its successor, and, as we have said, the use can only differ in degree and not in character.

V. There is another question arising on the facts in this case, that seems to be more controlling in its operation than the one just discussed. The coveyance made by Davidson to the township of Wellington was of lots in the town of Wellington, which at that time was a city of the third class. This conveyance was made for the consideration "of $1, and the enhanced value of lots that are owned by the grantor that lie

in the vicinity of the herein-granted lots." The conveyance was made to the township of Wellington, "its successor or successors," and it is made for the express purpose of erecting a township hall. The city of Wellington, as a city of the second class, has become the successor by operation of law of all the territory embraced within the boundaries of the city. This succession embraces the exercise of all the powers of taxation, even for county purposes, of local legislative powers which are granted to such cities, for all educational purposes, for election purposes, and for all local administrative powers known to the law. We have already seen by a quotation from Dillon on Municipal Corporations, and it is a philosophical proposition, that there cannot be, at the same time, within the same territory, two distinct municipal corporations exercising the same power and jurisdiction. Hence the control of these lots must vest entirely in one or the other of these municipalities. Beyond all question these lots and the buildings thereon are no longer a part or parcel of the territory of Wellington township, and are a part of the territory of the city of Wellington. Has the township of Wellington the legal attribute of owning real estate, even for a public purpose, outside of its territorial limits? It will not be claimed that such power exists except by express legislative enactment. It would seem that the city of Wellington, as successor of Wellington township, became invested by the express terms of the conveyance with the legal title to the lots in dispute; that at the time of the conveyance such succession was in the contemplation of the grantor, and that the words "successor or successors" were used in anticipation that Wellington, then a city of the third class, and a part of the township, would eventually grow into such proportions that its legal identity would be separated from the township, and by the operation of the natural laws of growth and development it would emerge into a distinct and separate municipality. There can be no question but that the city of Wellington is the legal successor, so far as the territory within its limits is

concerned, of the township of Wellington. (*Curtis v. Board of Education*, 43 Kas. 138.) As such successor, it takes the lots and the buildings thereon, subject to the limitation in the manner of their use.

VI. In the recent case of *Board of Education v. School District*, 45 Kas. 560, some expressions in the opinion are in conflict with this decision. That was a purely equitable action, its object being to restrain the officers of School District No. 7 from any interference with the control by the board of the school-house. It seemed to us then that the cases of *Heizer v. Yohn*, 37 Ind. 415, and *Reckert v. City of Peru*, 60 id. 473, were in point and were controlling. It will be noticed by a critical examination of these cases that the decisions were largely controlled by the fact that only a portion of the school district was taken into the city of Indianapolis in the one case, and into the city of Peru in the other; and hence the court concluded that it would not be equitable to grant the relief prayed for. The distinction between these cases and that of *School Township of Allen v. Town of Macy*, 109 Ind. 559, is clearly stated in the latter case, and, as we think, it is just the difference between *Board of Education v. School District*, supra, and the case we are now considering. There is this marked difference between the cases: This is an action to quiet title under the code by a party who for many years has been in the exclusive possession of the property, claiming to be the holder of the legal title. The Wyandotte county case was one in which a party claimed to be entitled to possession by virtue of an extension of the boundaries of the city, but whose right of possession was denied, and it was sought to settle the title by injunction; and the universal rule is, that to prevent interference of possession and control by injunction, the party applying for the provisional remedy must hold the title. The real question in that case was, Who owned the school-house and the ground upon which it was built? and this question ought not to be determined on a motion to vacate a temporary injunction. Be that as it may, we are now of the opinion that the city of Wellington is the legal successor of the township of

4. Rights in town-hall of city formed from township.

Wellington, so far as this property is concerned, both by operation of law, by the express terms of the conveyance, by the necessity of a municipality having jurisdiction of property exclusively within its limits, and by the fact that no power is given to townships by the statutes of the state to hold real estate outside of its limits, as it cannot be used when so situated for any public purpose of the township, and it cannot be subjected to the free and unrestrained possession and control of the authorities of the township without collisions with the authority of the city.

VII. Attention is called to an act of the legislature, being chapter 62 of the Laws of 1889, which it is claimed disposes of the interests of these various municipalities on equitable principles. This act reads as follows:

"AN ACT to provide for the apportionment of public property in Sumner county, Kansas, by a sale of lots 11 and 12, in block 53, in Wellington, Kansas, and apportion the proceeds of the same among the townships of Seventy-six, Downs, Osborn, Jackson, Wellington, and the city of Wellington, in said county.

"PREAMBLE.

"*Whereas*, That in 1873 the present city of Wellington, the present townships of Wellington, Seventy-six, Osborn, Downs and Jackson were one single township, known as Wellington township, in Sumner county, Kansas; and

"*Whereas*, While said city and townships so composed one township, there was purchased by said township lots 11 and 12, in block 53, in Wellington, Sumner county, Kansas, and erected upon the same, at a cost of $10,829.79, a township hall, now known as the old court-house; and

"*Whereas*, Since the erection of said building the city of Wellington has been organized into a city of the second class, and then [there] has been detached from the territory of the original township of Wellington the territory now making the townships of Seventy-six, Osborn, Downs, Jackson, and the city of Wellington; and

"*Whereas*, The proportional part of said cost of erecting the said township hall which was contributed by the present city of Wellington was $4,928.83; by the present township of Seventy-six, was $814.76; by the present township of Osborn, was $625.10; by the present township of Downs, was $251;

by the present township of Jackson, was $595.99; by the present township of Wellington, was $3,614.11; and

"*Whereas,* There still remains in the treasury of the township of Wellington of said sum contributed toward the erection of said building the sum of $678.69; and

"*Whereas,* The legal title to said building and lots is in the township of Wellington : therefore,

"SECTION 1. *Be it enacted by the legislature of Kansas,* That the sheriff of Sumner county, Kansas, shall within thirty days after this act takes effect, proceed to have advertised, appraised and sold, in the same manner as is now provided by law for selling real estate under order of sale from the district court, lots 11 and 12, in block 53, in Wellington, Sumner county, Kansas, and make a report of said sale to the district court of said county and state in like manner as is now provided by law in sales of real estate as far as applicable.

"SEC. 2. It shall be the duty of said district court to confirm the sale mentioned in this act if the same is made in accordance with this act, and order the sheriff of Sumner county, Kansas, upon the payment into court the purchase-money, a deed to the purchaser, which deed shall be in all respects binding, and confer upon the purchaser a full and complete title in fee-simple to said lots 11 and 12, in block 53, in Wellington, Kansas.

"SEC. 3. The district judge of said court shall, by an order under his hand, direct the clerk of the district court to disburse the sum realized from the sale of the lots named in this act among the following-named municipalities in Sumner county, Kansas, and in the proportion as follows: To the township of Seventy-six, that per cent. of the proceeds of sale that $814.76 is of $10,829.79; to the township of Osborn, that per centum of the proceeds of the sale that $625.10 is of $10,829.79; to the township of Downs, that per centum of the proceeds of sale that $251 is of $10,829.79; to the township of Wellington, that per centum of the proceeds of sale that $3,614 is of $10,829.79; to the township of Jackson, that per centum of the proceeds of sale that $595.99 is of $10,829.79; and to the city of Wellington, that per cent. of the proceeds of sale that $4,928.83 is of $10,829.79: *Provided,* That shall said judge find that any part of the moneys contributed toward the erection of the building mentioned in this act has not been disbursed by the township of Wellington, then the sum so found to remain with said township shall be deducted from said township *pro rata.*

"SEC. 4. The purchaser of said lots shall have all unpaid rents, and is hereby empowered to maintain an action in any court of competent jurisdiction for the same.

"SEC. 5. This act shall take effect and be in force from and after its publication in the official state paper."

Discarding the preamble, and considering the body of the act only, it may be at first said that it is doubtful whether the legislature can decide a case pending in the courts, and if, when there is a controversy about the title to real estate, the legislative branch of the state government can declare the title to be vested in one or the other of the litigants.   In the second place, if force and effect are given to this act of the legislature, the express purpose of the conveyance by Davidson to the township and its successor is not only defeated, but compliance with its terms is rendered impossible.   As we have remarked elsewhere, the manner of the use of the property is expressly limited by the language used in the deed of conveyance, and the absolute sale of the property as directed by this act of the legislature is in violation of that use or manner of use.   This act provides that the property shall be sold, and that a sheriff's deed shall be made to the purchaser that will vest in him the absolute fee-simple title to the same. This is not a proper exercise of legislative power, in any view, and cannot have the effect to make any final disposition of this property contrary to and in violation of the avowed purpose and express object of the grant.

It follows from all these considerations that we are constrained to recommend that the judgment of the district court be reversed, and the cause remanded, with instructions to overrule the demurrers.

By the Court: It is so ordered.

All the Justices concurring.