# Supreme Court of Judicature

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1894, IN THE SEVENTY-
EIGHTH YEAR OF THE STATE.

---◆---

No. 16,795.

NEWPOINT LODGE, NO. 255, FREE AND ACCEPTED MASONS
*v.* SCHOOL TOWN OF NEWPOINT.

DEED.—*Conveyance to School Township for School Purposes.—Implied
Condition.—Reversion.— Title.*—Where land is conveyed by war-
ranty deed to a school township, "for the use of the common
schools," without any expressed condition, there is no implied con-
dition by which the property would revert to the grantor, upon a
mere nonuser of the same for school purposes, the title being as
good as could be made to a school township.

SAME.—*School Property.— Township Trustee.—Negligence.—Forfeiture.*
—Any negligence or inattention to duty on the part of the school
trustee could not work a forfeiture of the property, of which he had
but temporary charge.

SAME.—*School Property.—Relocation of School-House.—Abandonment.*
—The locating of the school-house on different ground, and the us-
ing of the old school-house and grounds for public meetings, the
house being supplied for such purpose with temporary·seats by the
trustee, do not amount to an abandonment of the premises.

SAME.—*Construction by Parties.— When will not Prevail.— Common
Schools.*—A construction placed on a deed by the parties, where it
is a conveyance to a school township, for the use of the common
schools, will not prevail over the plain terms of the deed which is
in strict compliance with the statute.

PARTIES.— *School Township.— School Town.— School Property.*— A
school town is a proper party in an action affecting property which
it acquired by accession, from the school township, by reason of its
incorporation.          (141)

From the Decatur Circuit Court.

C. Ewing and J. K. Ewing, for appellant.

S. A. Bonner, M. D. Tackett and B. F. Bennett, for appellee.

HOWARD, J.—This was an action by the appellee school town to recover possession of real estate.

The cause was submitted to the court for trial, and there was a finding and judgment for the appellee.

A reversal is asked upon the evidence.

From the evidence, which is not disputed, it appears that on the 23d day of February, 1861, Joel Colson was the owner of the land in controversy, and on that day he and his wife conveyed the same by a deed as follows:

"This indenture witnesseth, that we, Joel Colson and Elizabeth Colson, his wife, of Decatur county, in the State of Indiana, convey and warrant to Salt Creek township, of Decatur county, for the use of the common schools in Decatur county, in the State of Indiana, for the sum of one dollar, the following real estate in Decatur county, in the State of Indiana (describing the land); subject to the right of the Newpoint Lodge, No. 255, of the Masonic fraternity, to erect a lodge upon any building built thereon, and the right of way through the first story to said lodge."

This deed was duly acknowledged and recorded; and the school township of Salt Creek entered into possession of the land and erected a brick building for school purposes, on the top story of which the appellant erected a room for lodge purposes, having a right of ingress and egress, as provided in the deed. The parties so continued to use the premises until the fall of 1880.

In the winter of 1879–80 the school trustee of the township called a meeting of the patrons of the school district, about all of whom attended, at which meeting

it was determined that the building was unsafe and no longer suitable for a school, and that a new school building should be erected.   The new building was erected at another location, and the school furniture and appliances were removed to the new building.   The old schoolroom was fitted with temporary seats by the school trustee and used for a little over a year longer for general meetings, until the windows and doors became broken, after which it ceased to be used for any purpose.

Joel Colson died intestate in 1881, and, in a partition of his real estate, the land in dispute was set off to his son, Abner Colson.   The township was not a party to the partition suit.   In the summer of 1882 Abner Colson took peaceable possession of the property, and held it until February 16, 1888, when he conveyed it to appellant, who has held it ever since.   Since the summer of 1882, the possession of Abner Colson and his grantee has been exclusive and undisturbed.

One witness testified that, in 1882, he made application to Charles Marlin, then township trustee, to purchase the lot, and that Marlin then told him that he did not know whether he had a right to sell it.   Another witness testified that, in 1881, he applied to Marlin to rent the property, and that Marlin told him to go to Abner Colson, as he had the right to rent it.   Marlin himself testified that he never had either of such conversations.

It is agreed that the several township trustees, from the time that Abner Colson took possession of said property, lived in the town of Newpoint and had knowledge that he and his grantee were in such possession, and never made any claim to the property or objection to such possession.

Since March, 1890, said Charles Marlin has been one of the school trustees of the town of Newpoint, within

whose corporate limits the property in question is situated. In 1888, just prior to the execution of the deed from Abner Colson to appellant, Charles Marlin was also one of the trustees of the appellant lodge, and, with the other trustees of said lodge, went to the city of Greensburg to examine into the title of Abner Colson to the lot, and, after looking at the deeds in the recorder's office, reported to the appellant that he thought the title was all right; and thereupon, at the request, or under the direction, of the appellant, he paid to Colson the sum of two hundred dollars for a deed to the property.

The said Marlin and another school trustee, acting for said town, in October, 1890, caused the complaint herein to be filed against appellant. It is admitted that said Marlin is not a lawyer, and never claimed to be. This is substantially all the evidence in the case.

The suit was properly brought in the name of the school town of Newpoint, notwithstanding the fact that the land was originally deeded to Salt Creek township.

As said in *School Tp. of Allen* v. *School Town of Macy*, 109 Ind. 559, when a town is incorporated and organized as a school corporation, it succeeds the school township in which it is situated in all educational matters connected with the public schools within its limits, and the title to school buildings previously erected therein by the township vests in the town.

The appellant first contends that since the deed from Joel Colson conveyed the property to the township for "school purposes," therefore when it ceased to be used for such purposes it reverted to the grantor or his heirs. The conveyance was by warranty deed, and the words in the deed show the conveyance to be "for the use of the common schools." These are the words of the statute providing for the title to school property, section 5996,

R. S. 1894 (section 4508, R. S. 1881), which requires that "The title to all lands acquired for school purposes shall be conveyed to the township, incorporated town or city for which it is acquired, in the corporate name of such township, town, or city, which is used for school purposes, for the use of common schools therein."

Yet appellant says that "When this property was abandoned by the township for school purposes, this was a breach of the implied condition in the deed, and the property reverted to the grantor."

We do not think there was any condition, express or implied, in the deed. The deed was in the words required by the statute, "for the use of the common schools;" and it conveyed as good a title as could be made to the school township. The use to which the township might put the land might be, as it was in this case, to erect and maintain a school thereon; or it might be to dispose of the land and select a more eligible site with the proceeds; or, in fine, any other use the corporation might deem best for the benefit of the schools. We do not say that there might not be a condition of forfeiture in the deed, for nonuser, though we do not well see how that could be, following the spirit of the section of the statute above quoted.

Section 6000, R. S. 1894 (section 4511, R. S. 1881), however, seems to recognize the possibility of conditions in title to school property. Be that as it may, there is no such condition in the deed before us. The question has been fully considered by this court in the recent cases of *Sumner* v. *Darnell*, 128 Ind. 38, and *Higbee* v. *Rodeman*, 129 Ind. 244, where it is held that language such as that contained in the deed in the case at bar does not tend to create a condition subsequent, and that the title conveyed is absolute. The former of these cases

refers fully to the authorities, and is decisive of the question.

Appellant's chief contention, however, is, that the parties have, by their acts, placed a construction upon the deed of Joel Colson, according to which construction the property rightfully reverted to his heirs, and was awarded in partition to his son, Abner Colson.

As sustaining this contention, the rule is quoted from *Lyles* v. *Lescher*, 108 Ind. 382, that, "where the acts of the parties have placed a construction upon a contract, the courts will give effect to the contract as the parties have construed it."

This contention, and the rule invoked in its support, proceed upon the assumption that there is some uncertainty in the deed, and that the parties, by their actions, have explained that uncertainty. If the deed were, in fact, uncertain in its meaning, there might be some plausibility in this reasoning, and the rule suggested might be applicable. We have seen, however, that the deed is in plain terms and follows strictly the statutory requirements. If we should admit that deed to be uncertain in its meaning, then, in any case where a school corporation held a deed to a school lot "for the use of the common schools," and should desire to change the location of the school to a more suitable place, doubt would arise at once as to whether the corporation would have good title to the old lot after removing to the new one. And in case the old lot should not be sold for some time, through inability to find a purchaser, or through carelessness or ignorance of his duty on the part of the trustee, the claim might be set up that the school corporation had abandoned title to the lot. We do not think that even private property can be lost in that way.

It may be admitted that if property is abandoned by

the owner, and some one, under color of title, takes possession and holds it adversely for twenty years or over, his possession will ripen into title. But that is not this case. Abner Colson had no color of title, and did not, with his grantee, hold the land adversely for twenty years.

Neither do we think that any abandonment is shown in this case. The trustee, after the building of a new schoolhouse in another place, fitted up the old schoolroom with temporary seats, for such meetings as are often held in schoolrooms, by which the people of the school district and the general public are accommodated. The trustee then seems to have neglected his duty, as other officials sometimes do in the care of public property in their charge. The school corporation was not made a party to the partition suit; so that proceeding does not affect the question.

But, even if all that is urged in the able and earnest brief of counsel for appellant were true as to private parties, and to the construction of deeds conveying property between them, still we do not think it would be applicable to this case. The property did not belong to Charles Marlin, or to any other of the school trustees named; but belonged to the public schools, and was held in trust for them. Any negligence or inattention to duty on the part of the trustee could not work a forfeiture of the public property, of which he had but temporary charge.

It may seem a hardship to appellant to lose its investment in this property; but, because it trusted to the representations of its trustee, it does not follow that the rights of the public schools of the State should suffer.

There is no dispute as to the right of appellant to continue its occupancy of the upper room of the old build-

ing, according to the terms of the original deed of Joel Colson.

The judgment is affirmed.

Filed May 29, 1894.