[L. A. No. 2296.   Department Two.—November 1, 1909.]

# PASS SCHOOL DISTRICT OF LOS ANGELES COUNTY, Appellant, v. HOLLYWOOD CITY SCHOOL DISTRICT OF LOS ANGELES COUNTY, Respondent.

SCHOOL DISTRICTS—CHANGE OF BOUNDARIES—TRANSFER OF OWNERSHIP OF SCHOOL PROPERTY TO NEW DISTRICT—DUE PROCESS OF LAW.— Land situated within the original territorial limits of a school district, which was owned and used by it for school purposes, but which, by reason of a change in boundaries, is subsequently included within the territorial limits of another school district, becomes the property of, and subject to the power and control of the latter district. Such a transfer of ownership does not constitute a taking of property without due process of law.

ID.—POWER OF LEGISLATURE OVER SCHOOL DISTRICTS.—School districts in this state are public *quasi* municipal corporations, and subject to such constitutional limitations as may exist. The power of the legislature over them is plenary. It may divide, change, or abolish them at pleasure.

ID.—DIVISION OF PROPERTY OF DISTRICT.—In the exercise of such power, the legislature may provide for the division of the property and the apportionment of the debts of the old corporation, when a portion of its territory and public property are transferred to the jurisdiction of another corporation. But in the absence of such provision, the rule of the common law obtains, which leaves the property where it is found, and the debt upon the original debtor.

ID.—STATE BENEFICIAL OWNER OF SCHOOL PROPERTY.—The beneficial owner of the fee of public school property is the state, and its agencies and mandatories—the various public and municipal corporations in whom the title rests—are essentially nothing but trustees of the state, holding the property and devoting it to the uses which the state itself directs. The transfer of title from one district to another is nothing more, in effect, than the naming by the state of other trustees to manage its property for the same uses and purposes to which it was formerly devoted.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. N. P. Conrey, Judge.

The facts are stated in the opinion of the court.

Willoughby Cole, for Appellant.

Robert Young, and Hanson & Heath, for Respondent.

HENSHAW, J.—This action was brought to quiet title to a piece of land and the schoolhouse thereon formerly within the limits of plaintiff school district and used by the district for public school purposes.  Judgment passed for defendant school district, and from that judgment and from the order denying its motion for a new trial plaintiff appeals.

The facts are stipulated, subject, as to some of them, to objections touching their admissibility.  From these facts it appears that plaintiff for many years past has been and still is a school district of Los Angeles County.  In 1889, the real property in controversy was deeded to the trustees of plaintiff "to be used as a schoolhouse, lot and ground."  For such purposes plaintiff held and used the property until in November, 1903, when the city of Hollywood was incorporated, with which incorporation came into existence the Hollywood City School District, defendant herein.  The school property in question was included, on the incorporation of the city of Hollywood and the organization of the Hollywood City School District, within the corporate limits of the latter, and is still included therein.  The remaining portion of the Pass School District, not within the corporate limits of the city of Hollywood, continued as a school district under the name of the Pass School District.  No petition has been filed on behalf of the existing Pass School District for annexation to the Hollywood City School District, as provided in section 1576 of the Political Code.  The question presented may be thus stated:  What, under the indicated circumstances, is the disposition made by the law of the real property of such corporation owned and used for the corporate purposes when, by a change in the boundaries, that property falls within the territorial limits of a new corporation organized for identical purposes?  Or, wording it differently, did the title, dominion, power, and control over the land in controversy pass to the Hollywood City School District, or did they remain where formerly they had been, with the Pass School District?  So far as this state is concerned, this question would seem to have been conclusively answered in favor of respondent by such cases as *Los Angeles County* v. *Orange County,* 97 Cal. 329, [32 Pac. 316] ; *Johnson* v. *City of San Diego,* 109 Cal. 468, [42 Pac. 249] ; and *Vernon School District* v. *Board of Education,* 125 Cal. 593, [58 Pac. 175].  The last case is

directly in point.  It was an action brought to quiet title by the Vernon School District to lands used for public school purposes originally within the territorial limits of the district, but subsequently, by annexation, falling within the corporate limits of the city of Los Angeles.  It is there said that "in the absence of statutory provisions governing the ownership of municipal property, upon the division of a municipality, municipal property consisting of real estate belongs to the municipality within which it is located by the division."  The judgment of the trial court so decreeing was upheld.  But appellant argues that this decision should be reconsidered; that it does violence to its constitutional rights in depriving it of property without due process of law; that it works great injustice, and that it is contrary to the law as laid down in the best considered cases.  Because of the earnestness with which these pleas are advanced, and of the brevity with which the subject was treated in the Vernon case, more amplified discussion of the question may not be amiss.

School districts of this state are · public *quasi* municipal corporations.  (*Hughes* v. *Ewing,* 93 Cal. 414, [28 Pac. 1067] ; *Kennedy* v. *Miller,* 97 Cal. 429, [32 Pac. 558].)   Subject to · such constitutional limitations as may exist, the power of the legislature over these public municipal corporations is plenary.  It may divide, change, or abolish them at pleasure.  (*Hughes* v. *Ewing,* 93 Cal. 414, [28 Pac. 1069] ; *Bay View School District* v. *Linscott,* 99 Cal. 27, [33 Pac. 781] ; 1 Dillon on Municipal Corporations, p. 54.)   By the legal annexation of the land in controversy to the city of Hollywood and the Hollywood City School District, (which latter, by virtue of section 1576 of the Political Code, sprang at the same time into existence), the power of the Pass School District to use this property for school purposes undoubtedly came to an end.  For, by section 1617 of the Political Code, the management and control of school property within their district is vested in the trustees of the district.  This proposition, as we understand it, appellant does not dispute.  But it contends that *title* to this property still remained in the plaintiff district, with the correlative rights of leasing or selling the same.

The legislative power being full and complete over the matter, as a part of that power it may make provision for the

division of the property and the apportionment of the debts of the old corporation, when a portion of its territory and public property are transferred to the jurisdiction of another corporation. But in the absence of such provision, the rule of the common law obtains, and that rule leaves the property where it is found, and the debt upon the original debtor. (*Johnson* v. *San Diego*, 109 Cal. 477, [42 Pac. 249] ; *Board of School Directors* v. *Ashland*, 87 Wis. 533, [58 N. W. 377].) Such is the declaration in the Vernon case, in the cases of *Bay View School District* v. *Linscott*, 99 Cal. 27, [33 Pac. 781] ; of the supreme court of the United States in *Laramie* v. *County of Albany*, 93 U. S. 207; *Mountpleasant* v. *Beckwith*, 100 U. S. 535; *McGovern* v. *Fairchild*, 2 Wash. 479, [27 Pac. 173] ; *Board of Education* v. *Board of Education*, 30 W. Va. 424, [4 S. E. 640], 20 Am. & Eng. Corp. Cas., p. 11; *Allen* v. *School Town of Macey*, 109 Ind. 599, [10 N. E. 578] ; *New Point etc.* v. *School Town of New Point*, 138 Ind. 141, [37 N. E. 650] ; *Prescott* v. *Town of Lenox*, 100 Tenn. 591, [47 S. W. 181] ; *Bloomfield* v. *Glen Ridge*, 54 N. J. Eq. 280, [33 Atl. 925] ; 1 Dillon on Municipal Corporations, p. 64; 15 Am. & Eng. Ency. of Law, p. 1023; *City of Wellington* v. *Wellington Township*, 46 Kan. 213, [26 Pac. 415], and of cases from many other jurisdictions.

To the contention that a transfer of ownership thus accomplished works the taking of property without due process of law, it should be sufficient to point out that in all such cases the beneficial owner of the fee is the state itself, and that its agencies and mandatories—the various public and municipal corporations in whom the title rests—are essentially nothing but trustees of the state, holding the property and devoting it to the uses which the state itself directs. The transfer of title without due process of law, of which appellant so bitterly complains, is nothing more, in effect, than the naming by the state of other trustees to manage property which it owns and to manage the property for the same identical uses and purposes to which it was formerly devoted. In point of law, then, the beneficial title to the estate is not affected at all. All that is done is to transfer the legal title under the same trust from one trustee to another. In this sense the trustees of the Hollywood City School District became, by operation of law, successors to the trustees of

the Pass School District, as is directly held in *Allen* v. *School Town of Macey,* 109 Ind. 559, [10 N. E. 578], where it is said: "It is now a well-recognized legal inference deducible as well from general principles as from the decided cases, that under the constitution and laws of this state, public school property is held in trust for school purposes by the persons or corporations authorized for the time being to control such property, and that it is in the power of the legislature to provide for a change in the trusteeship of such property in certain contingencies presumably requiring such a change, or, indeed, to change the trustees of that class of property whenever it may choose to do so."

Even if such well-established principles could be set aside under the plea that they work injustice in the individual case, this plea here presented is without merit: The state is profoundly interested in the education of its young, but has no deep concern over the personality of the trustees who shall administer this trust, so long as the administration is in the orderly form of law. But to relieve against the possibility of injustice being worked by the operation of the rule which might, without recompense, take a schoolhouse away from one district and assign it to another, this state has made explicit provision whereby the use of the school under the changed conditions may still be open to the children within the territory to which it originally belonged. This provision is found in section 1576 of the Political Code. But the residents within the plaintiff district have not seen fit to avail themselves of it.

We are unable to perceive, therefore, that the rule adopted in this state either works injustice to plaintiff or does violence to any of its constitutional rights. Nor, to the last proposition which appellant urges,—namely, that the weight of authority is contrary to that laid down in this state, can assent be granted. The authorities which he cites are *Wynona* v. *School District,* 40 Minn. 13, [12 Am. St. Rep. 687, 41 N. W. 539]; *Board of Education* v. *School Trustees,* 45 Kan. 560, [26 Pac. 13]; 21 Am. & Eng. Ency. of Law, 1st ed. Title "Schools," page 791.

The Minnesota case unquestionably holds with appellant's contention, but it stands in single opposition to an otherwise unbroken current of authority. In this connection we have

heretofore cited .the decisions of the supreme court of the United States and of many sister states, with the text writers thereon.

The Minnesota case is expressly disapproved in *Bloomfield* v. *Glen Ridge,* 54 N. J. Eq. 280, [33 Atl. 925], and in *Prescott* v. *Lenox,* 100 Tenn. 591, [47 S. W. 181].

The language of the supreme court of Kansas in *Board of Education* v. *School Trustees* is *obiter,* and later was expressly disapproved in *City of Wellington* v. *Wellington Township,* 46 Kan. 213, [26 Pac. 514], where that state adopts the accepted rule. The declaration in the first edition of the Am. & Eng. Ency. of Law under the head of "Schools" is modified in the second edition, where the rule adopted in Minnesota is set forth upon the authority of *Wynona* v. *School District,* 40 Minn. 13, [12 Am. St. Rep. 687, 41 N. W. 539], and other Minnesota cases, but where also it is declared: "On the other hand, it has been held that the common law leaves the property where it is found, and that, in the absence of special legislation to the contrary, a new school district which is organized from territory detached from an old school district, will not be required to pay anything to the old district on account of schoolhouses or schoolhouse sites or any real estate whatever belonging to the old school district and situated in the new district." Moreover, in the 15th volume of the same learned work, at page 1023, it is said: "The old corporation will hold all the corporate property within her new limits . . . and the new corporation will hold all the property falling within her boundaries, to which the old corporation will have no claim."

The judgment and order appealed from are therefore affirmed.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.