16249

GAMBLE *ET AL.* v. DuBOSE, COUNTY TREASURER *ET AL.*
(54 S. E. (2d) 803)

*Messrs. DuRant, DuRant & Plowden,* of Manning, *for Appellants,*

*Messrs. James Hugh McFaddin* and *John G. Dinkins,* of Manning, *for Respondents,*

August 10, 1949.

OXNER, Justice.

Salem Centralized High School District was constituted of three common school districts of Clarendon County by Act No. 351 of the General Assembly of 1927, the permanent provisions of which are now codified as Sec. 5563 of the Code of 1942. Under this law it existed intact until 1948 when by Act No. 727 of that year, approved April 8, 1948, one of the constituent common school districts, known as Hicks School District No. 21, was withdrawn from the High School District by amendment of Sec. 5563, effective after a referendum on the question should be held in Hicks District. The election, later held, resulted in favor of withdrawal which was thereby accomplished. 45 Statutes at Large 1824.

Meanwhile, and before passage of the withdrawal act, the legislature had passed Act No. 959 (*sic*), approved March 6, 1948, 45 Statutes at Large 2542, which provided that surplus bond funds in all of the school districts of Clarendon County should be used first for payment of other indebtedness and the remaining surpluses should be transferred to the respective general funds of the districts. The point was made on circuit that Salem Centralized High School District had no general fund at the time of the passage of this act but the Court held in effect, unchallenged on appeal, that a general fund was thereby created for every district, including this High School District, which had surplus bond funds applicable thereto under the terms of the act.

The Act of 1927, 35 Statutes at Large 805, which created the High School District, authorized the issuance of bonds for the construction of a building, etc., and imposed a tax levy for the payment. From the proceeds of the latter the principal and interest of the bonds were fully paid and there remained after the withdrawal of Hicks District a surplus

in the hands of the County Treasurer (acting for the High School District) of $4,088.81. It is the bone of contention.

The trustees of the High School District and the County Superintendent of Education followed the usual form for transfer of the surplus funds to the general account of the High School District which the County Treasurer refused to honor in view of the claim of the seceding Hicks District for a proportionate amount which the treasurer calculated to be $907.19. The method employed to arrive at the latter amount is not disclosed by the record but this is immaterial in the view we take.

The controversy reached the circuit court through application of the trustees of the High School District for a writ of mandamus against the County Treasurer to require the transfer of the surplus funds to the general account of the High School District. In addition to the treasurer, the trustees of Hicks School District were made parties on account of their conflicting claim. Separate returns were made by the treasurer and the trustees, the latter in behalf of their district.

The court heard the case on the pleadings and the treasurer's records and concluded that the withdrawing district was entitled to the stated portion of the funds for its school purposes. This result was reached upon the conclusion that the act authorizing the withdrawal repealed by implication the earlier act of general application in the county directing the transfer of surplus school bond funds to the general fund accounts of the various districts in which such surpluses existed. However, reference to the withdrawal act, 45 Statutes at Large 1824, shows that it contained nothing with respect to the finances of the High School District or the withdrawing district, and we see no inconsistency in the acts. No statute affecting the situation, other than those which we have cited, has been called to our attention and we know of none. Thus the question must be solved by reference to common law principles.

It could, we think, with equal reason be contended that Hicks School District is entitled to partition of the high school building and grounds for which the money of its taxpayers proportionately paid. The nature of the property should make no difference in the principle. 47 Am. Jur, 312, Schools, Sec. 21.

Analogy is therefore found in the many cases in other jurisdictions relating to the ownership of real property where boundaries of school districts are changed. A leading case is *Pass School District v. Hollywood City School District,* 156 Cal. 416, 105 P. 122, 26 L. R. A., N. S., 485, 20 Ann. Cas. 87. Notes are appended to the reports in both of the cited annotated series. Cases from many courts, including the Supreme Court of the United States, are cited and reviewed to show the well established general rule that in the absence of statute or agreement the court leaves the ownership of school property where it is found after district boundaries are altered. Application of the rule to the facts of this case requires that the surplus bond funds be left in the district which had title and possession at the time of the withdrawal from the consolidation without contrary agreement or statute, which means that the funds in their entirety are the property of Salem Centralized High School District. This rule is supported by general governmental practice. A territory seceding from a larger unit of government is, in the absence of relevant law or agreement, not entitled to take with it any portion of the funds of the larger unit. So far as we are informed no one of the Confederate States undertook to claim any portion of the treasury of the United States upon secession from the Union, which is an historic precedent close to us of this State.

Moreover, our State Constitution of 1895 contains in Art. VII regulations pertinent to the creation of new counties and the transfer of territory from one county to another with provision for the moving territory to carry with it its just portion of the indebtedness of its old county, but there

is no provision for it to take any of the assets of its former parent county. Similar provision is found in Art. XI, Sec. 5, with respect to territory added to a city school district which is already bonded or otherwise possessed of school buildings.

Respondent relies upon the recent decision of *Moseley v. Welch,* 209 S. C. 19, 39 S. E. (2d) 133. However, none of the several issues which were decided in that case is controlling of that presented by this appeal. One feature of that case rather tends to reversal here because it was there held that a county operational consolidation of school districts could not constitutionally include consolidation of the separate funds of the constitutent districts (some of which had deficits) for the purpose of financing the consolidation. The situation here is about .the converse of that. Hicks School District would withdraw for itself a portion of that which is the property of the High School District, it having been derived from taxes levied upon the property located in the High School District as it was constituted at the time of the levies.

Reversed and remanded for further proceedings in accord with this opinion.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.