## WINSLOW v. FRANCE, *Treasurer*.

No. 31.   Opinion Filed March 6, 1908.

(94 Pac. 689.)

COUNTIES—Statehood—Divided Counties—County Property. Woods county as now constituted as a body corporate and politic succeeds to the property of said county as a body corporate and politic under the territory of Oklahoma, except that which falls within the boundaries of the detached territory, but subject to the action of the First Legislature and the jurisdiction of the Supreme Court as provided in sections 20 and 38 of the Schedule of the Constitution, and all acts of the Legislature pursuant thereto.

(Syllabus by the Court.)

Error from District Court, Woods County.

Action by F. N. Winslow, for himself and all others interested, against Henry France, treasurer. Judgment for defendant, and plaintiff brings error. Affirmed.

The plaintiff in error instituted this suit in the district court of Woods county, territory of Oklahoma, now a portion of the state of Oklahoma, on the 13th day of November, 1907, against Henry France, treasurer of Woods county, territory of Oklahoma, as defendant, alleging that he was a resident and citizen taxpayer of that part of the organized county of Woods in the territory of Oklahoma, proposed as the county of Alfalfa by the Constitution adopted by the people of Oklahoma and Indian Territory at an election held in said territories on the 17th day of September, 1907, which Constitution will be ratified by the proclamation of the President of the United States on the 16th day of November, 1907, at which time the proposed county of Alfalfa will become an organized county.

Plaintiff further alleged that each and every one of the citizens and taxpayers of the said proposed county of Alfalfa are

smilarly interested and affected in said proposed county of Alfalfa
by the acts thereinafter complained of, and that the subject-mat-
ter of this action is one of common and general interest of all
persons who are citizens and resident taxpayers of the territory
comprised of the said proposed county, and that they are so numer-
ous that it would be impracticable to bring them all before the
court; and for said reason the plaintiff sues for himself and all
others in such proposed county similarly interested and affected by
the acts of the said defendant, Henry France, as treasurer of the
organized county of Woods as then constituted.

Plaintiff further alleged: That at the last general election
held in Woods county, territory of Oklahoma, prior to September
17, 1907, the said defendant, Henry France, was duly elected
treasurer of said county, comprising all the territory now embraced
in the proposed counties of Alfalfa, Majors, and Woods, except a
portion detached from the organized county of Woodward and an-
nexed to the proposed county of Woods. That said defendant qual-
ified by taking the oath prescribed by statute and entering into an
official bond in the penal sum of $250,000 conditioned as required
by law. That since said time said defendant has continued in
office and performed all the duties incumbent upon him, and con-
tinues to do so. That said bond conditioned as aforesaid is still in
force and effect, and will continue in effect until all the duties in-
cumbent on said defendant as such treasurer are completely per-
formed as required by the laws of the said territory that may now
be in full force and effect and such as will become effective on the
16th day of November, 1907, and until a full and final settlement
is made by said defendant as such treasurer, and all moneys re-
ceived by him in such capacity have been paid over to the persons
and officers entitled to the same in the proportion to which such
person or officer or county is entitled. That under the Constitu-
tion of the proposed state of Oklahoma the proposed county of
Woods is formed of a part of the original county of Woods and a
part of the county of Woodward; that at a special election held under

an election ordinance adopted by the constitutional convention under which the election was held, on the adoption of the proposed Constitution of said proposed state, and for the election of state, district, county, township, and municipal officers for the said proposed state, one Thomas Dyer was elected treasurer of the said proposed county of Woods; that one H. L. Young was elected treasurer of said proposed county of Alfalfa, and one J. Mathis was elected treasurer of the proposed county of Major. That the said defendant, Henry France, treasurer of said original and organized county of Woods, is the custodian of and has now in his possession $90,000 in cash, collected as such treasurer and belonging to the original organized county of Woods, the tax rolls for the year 1906, whereon $40,000 of uncollected taxes for the said proposed county of Woods, the proposed county of Alfalfa, and the proposed county of Major, which he is now engaged in collecting under the laws of the territory of Oklahoma, as such treasurer. That the tax rolls for the year 1907, whereon there is about $300,000 in taxes, will be turned over to the defendant, Henry France, treasurer as aforesaid, not later than the 15th day of November, 1907, as proposed, and will become on the 16th day of November, 1907, Woods, Alfalfa and Major counties. That said defendant Henry France, treasurer as aforesaid, has also in his possession and is the custodian of warrants for the collection of $25,000 of back taxes of former years for the three proposed counties of Woods, Alfalfa, and Major. That a great portion of said taxes, and the moneys arising from the collection thereof, and the $90,000 now on hand, belong to the proposed counties of Woods, Alfalfa, and Major, but in what proportion is to this plaintiff unknown, but the greater portion belongs to the counties of Alfalfa and Major.

Plaintiff further alleges that said defendant, Henry France, as treasurer aforesaid of the original organized county of Woods, threatens to, and will unless restrained, turn over to Thomas Dyer, treasurer-elect of the said proposed county of Woods, the said sum of $90,000, the tax rolls for the taxes of 1906, whereon $50,000 is

in process of collection, and the tax rolls of the year 1907 of the original organized county of Woods whereon taxes are to become due from the property and the citizens of the proposed counties of Woods, Alfalfa, and Major to the amount of $300,000, and also the warrants for back taxes amounting to $25,000, and also the warrants for $25,000 of former years, due from the citizens and property of the three proposed counties. That on the 16th day of November, 1907, when the proclamation of the President of the United States is issued, accepting the said Constitution adopted by the two territories on the 17th day of September, 1907, the said Thomas Dyer, H. L. Young, and J. Mathis will become *eo instante* the county treasurers of the respective counties of Woods, Alfalfa, and Major, and each and all will be the successors in office of the said defendant, Henry France, and, in addition thereto, the said Thomas Dyer will become a successor in part of the county treasurer of Woodward county. That said Thomas Dyer, treasurer-elect of the proposed county of Woods, will have no right or authority in law to receive and become the custodian of that portion of the moneys now in the hands of said defendant, or to which the said Alfalfa and Major counties are entitled, nor will the said Thomas Dyer have any right or authority to receive or become the custodian of the tax rolls for the taxes of 1906, the tax rolls of 1907, nor the warrants for back taxes belonging to or to which the counties of Alfalfa and Major are entitled. That no bond under any existing law can be required of the said treasurer-elect of the proposed county of Woods covering any of said moneys now in the hands of said defendant as treasurer of the original county of Woods, or of the tax rolls for the taxes of former years covering the proportion of said money and taxes uncollected that will belong to or to which the said counties of Alfalfa and Major are entitled. That there is no law in existence in the territory of Oklahoma, nor is there any provision in the Constitution adopted by the people of Oklahoma and Indian Territory, authorizing the said Thomas Dyer, H. L. Young, or J. Mathis to receive and become

the custodian of said moneys, tax rolls, etc. That said defendant, Henry France, as treasurer of the organized county of Woods, embracing all the territory now contained in the proposed counties of Woods, Alfalfa, and Major, must remain the custodian of the moneys, tax rolls, etc., under the terms and provisions of the said Constitution, until the Legislature for the proposed state of Oklahoma shall provide by general, special, or local law for the equitable division of the property, assets, and liabilities of the counties created in whole or in part from other counties, and should the First Session of the Legislature of the proposed state fail to provide for the division of the property, assets, and liabilities of any county existing in the territory of Oklahoma between such county and any counties created in whole or in part out of such county, then original jurisdiction is conferred upon the Supreme Court to make equitable division of such property, assets and liabilities; and the said plaintiff says that until the Legislature of the proposed state of Oklahoma makes provision therefor, or failing to do so at its first session, the Supreme Court of the state will make such equitable division, and until then the said defendant, Henry France, is the proper, legal, and only custodian of all the moneys belonging to the territory originally embraced in the organized county of Woods, and is the only officer known to the law who can be held legally responsible for said moneys collected and uncollected belonging to the territory of said original county, and is the only officer known to the law who can be held responsible by said newly created counties upon his bond for said moneys and property now on hand and in process of collection, and he alone as such treasurer will be held by the said county of Alfalfa, and the resident and taxpaying citizens thereof, as trustee for all that portion of said moneys arising from the taxes collected and to be collected from the taxpayers and property of said Alfalfa county, when the equitable division thereof has been made either by the Legislature of the proposed state of Oklahoma or the Supreme Court of said state.

Plaintiff further alleges that he has no adequate legal remedy, and that plaintiff and all the resident and citizen taxpayers of Alfalfa county are liable to suffer irreparable injury and damage unless the court enjoins the said defendant, as treasurer of the original organized county of Woods, from paying over to either the said Thomas Dyer, treasurer-elect of said proposed county of Woods, or H. L. Young or J. Mathis, treasurers-elect of the proposed counties of Alfalfa and Major, any or all of said moneys now on hand or in process of collection until an apportionment and equitable division be made in accordance with the provisions of said Constitution of said proposed state. That unless restrained, the said defendant, Henry France, treasurer as aforesaid, will, on the 16th day of November, 1907, turn over to the said Thomas Dyer, treasurer-elect as aforesaid, all said moneys on hand, taxes and tax rolls now in his legal custody, to the great injury and damage of this plaintiff and all others similarly interested or affected.

Plaintiff prays that the court issue an order of injunction enjoining and restraining the said defendant, Henry France, as treasurer aforesaid, from paying over any more moneys or turning over the tax rolls of the original county of Woods to the said Thomas Dyer as treasurer-elect, or to the said H. L. Young or J. Mathis, treasurers-elect as aforesaid of Alfalfa and Major counties, until otherwise ordered so to do by competent and legal authority.

Immediately thereafter, but prior to the issuance of said summons, said petition, together with an affidavit made and executed by said plaintiff, to the effect that the Hon. J. L. Pancoast, judge of the district court within and for said county, was absent from said county and had been for several days last past, and would be for the next four or five days, was presented to the Hon. L. T. Wilson, probate judge of said county of Woods, territory of Oklahoma, who, upon hearing said petition, affidavit, and evidence thereon, issued an order of injunction, reciting that it appearing to the satisfaction of the probate judge from the affidavit of said plain-

tiff, F. N. Winslow, that the Hon. J. L. Pancoast, judge aforesaid, was absent from said county, and it appearing to the court that said cause had been filed in the district court of said county, upon the presentation to him, as probate judge, of the petition in said cause for an injunction, upon an examination of said petition, it appearing from the allegations thereof, verified by affidavit, that the plaintiff was entitled to the relief prayed for, it was therefore ordered and adjudged that a temporary injunction be issued in said cause against the above defendant, Henry France, treasurer of Woods county, territory of Oklahoma, enjoining and restraining him from paying over to Thomas Dyer, treasurer-elect of the proposed county of Woods, the sum of $90,000 arising from the collection of the taxes of the present organized county of Woods, and restraining and enjoining him, as treasurer, from turning over or delivering to the said Thomas Dyer, treasurer-elect as aforesaid, or to the treasurers-elect of the proposed counties of Alfalfa and Major, the tax rolls for the taxes of the year 1906, uncollected for the year 1907, unless otherwise ordered, or until the Legislature of the proposed state of Oklahoma makes provision by general, special, or local law for the equitable division of the property, assets, and liabilities of the proposed counties of Woods, Alfalfa, and Major, created out of the original existing county of Woods, or until the Supreme Court of the proposed state of Oklahoma makes such equitable division of the property, assets, and liabilities that belong to and to which the proposed new counties of Woods, Alfalfa, and Major may be entitled, and to be held by the defendant, the said Henry France, as treasurer aforesaid, until the proper proportion of said moneys and taxes to which each of said proposed counties are entitled in accordance with law; and directing the clerk of said district court to issue said injunction upon the filing and approval of an injunction bond by the clerk in the sum of $10,000.

An injunction bond in due form in the sum of $10,000 was filed with the clerk of the district court, approved by said clerk,

and immediately thereafter summons on said petition and an order of injunction were issued by the clerk of said court, and served by the sheriff of said county upon the defendant.

Thereafter, on the 16th day of December, 1907, the defendant filed a demurrer to the petition in said cause to the effect that said petition did not state facts sufficient to constitute a cause of action against defendant. And afterwards, on the 18th day of December, 1907, same was heard and said demurrer was sustained, and said injunction ordered dissolved, and said case dismissed; to which action of the court in sustaining said demurrer and dissolving said injunction and dismissing said cause he duly excepted.

Said cause is now properly before this court on a petition in error.

*Snoddy & Son,* for plaintiff in error.
*F. M. Cowgill* and *Claude McCrory,* for defendant in error.

WILLIAMS, C. J. (after stating the facts as above). In this case the question is raised whether or not Woods county as now constituted succeeds to the property of Woods county as it existed under the territory of Oklahoma. This court will take judicial knowledge of the fact that Woods county comprises a certain portion of said county as it existed under the territory of Oklahoma, and has the same county seat that it had under the territorial form of government. It is well settled that if a new county is created out of the territory of an old county, or if part of its territory or inhabitants is annexed to another county, unless some provision is made in the act respecting the property and existing liabilities of the old county that the old county owns all the public property except such as may be located within the detached territory, and is responsible for the debts contracted by it before the act of separation was passed. *Laramie County v. Albany County et al.,* 92 U. S. 314, 23 L. E. 552; *North Hempstead v. Hempstead,* 2 Wend. (N. Y.) 134; *Wade v. Richmond,* 18 Grat. (Va.) 583; *Higginbotham v. Commonwealth,* 25 Grat. (Va.) 627; *Watson v. Com-*

*missioners of Pamlico,* 82 N. C. 17; 1 Dillon on Municipal Corporations, § 123.

If a portion of a territory is annexed, to another county, unless some provision is made in the act respecting the property and existing liabilities of the old county, the territory or inhabitants detached from the original county lose all claim to share in the property belonging to the county from which it was taken. Whilst it is thus relieved from the indebtedness resting upon the latter, yet it incurs the liabilities and shares in the property of the county to which it is attached, and is equally subject to assessment and taxation for that purpose. *Commissioners of Currituck v. Commissioners of Dare,* 79 N. C. 565; *Watson v. Commissioners of Pamlico,* 82 N. C. 17; *Chicago, etc., R. R. v. Cuming County,* 31 Neb. 374, 47 N. W. 1121; 1 Dillon on Municipal Corporations, § 123.

Woods county, as it exists under the state government, is the county or municipality remaining after the detachment of the territory therefrom to constitute the counties of Alfalfa and Major, and by the annexing to said original county certain designated territory, detached from the county of Woodward as it was constituted under the territory of Oklahoma. If Woods county, as at present constituted, is the successor of the county of the same name as a body corporate and politic under the territorial form of government, then it succeeds to all the property of said county except such as may be located within the boundaries of the detached territory.

Plaintiff in error insists that it is neither the successor of the old county, nor is it entitled to receive the property of the same. nor is it a county that existed under the territorial form of government. Section 20 of the Schedule of the Constitution is in *haec verba:*

"The Legislature shall provide by general, special, or local law for the equitable division of the property, assets and liabilities of any county existing in the territory of Oklahoma between such county and any new county or counties created. in whole or in part of the territory of such county."

Section 38 of said Schedule is in *haec verba:*

"Should the First Session of the Legislature, provided by this Constitution, fail to provide for the division of the property, assets and liabilities of any county existing in the territory of Oklahoma between such county and any county or counties created in whole or in part out of such county, original jurisdiction is hereby conferred upon the Supreme Court to make equitable division of such property, assets and liabilities, and for the purpose of hearing and receiving evidence and reporting findings of law and fact may appoint a special master in chancery in any such case."

The county of Day was the only county existing under the territory of Oklahoma whose identity by name was lost in the formation of new counties of the state, and it is specifically provided in section 21 of the Schedule that "all property, real and personal, and credits, claims and choses in action, belonging to the county of Day at the time of the admission of the state into the Union, shall be vested in and become the property of the county of Ellis: Provided, the Legislature shall provide by general, special, or local law, for the equitable division of the assets of Day county, thus transferred to Ellis county, and the liabilities of Day county between the counties of Roger Mills and Ellis"; said proviso being substantially the same as section 20 of the Schedule, *supra,* which is general in its terms in its application to "any county existing in the territory of Oklahoma between such county and any new county or counties created in whole or in part out of the territory of such county." ' Woods county, being an organized county within the territory of Oklahoma, was a body corporate and politic under the laws of said territory. Volume 1, section 1228, Wilson's Rev. & Ann. St. 1903. Section 2 of the Schedule is in *haec verba:*

"All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitation or are altered or repealed by law."

Section 13 of the enabling act (Act June 16, 1906, c. 3335, 34 Stat. 275 [U. S. Comp. St. Supp. 1907, p. 149]) is as follows:

"That said state * * * ; and that the laws in force in the territory of Oklahoma, as far as applicable, shall extend over and apply to said state until changed by the Legislature thereof."

Section 1, art. 17, Const., is as follows:

"Each county in this state, now or hereafter organized, shall be a body politic and corporate."

The corporate existence of said county, which was then organized, not having been abolished by the terms of the Constitution, but, on the contrary, is kept in force by virtue of said section 1, art. 17, and also by said section 2 of the Schedule and section 13 of the enabling act.

It is a rule of construction that an instrument must be construed as a whole in order that its intent and general purpose may be ascertained, and, whenever possible, to the end that the intent of the framers may be ascertained and carried out, and effect given to all of its provisions, and to promote the objects for which it was framed and adopted. The only county and body corporate and politic that lost its identity by name in the provision relating to counties was provided for by a special section, wherein a successor was named. Every other county that existed under the territory of Oklahoma remains in name the same, and, as the new county of Ellis, which has the same county seat and a part of the original territory of Day, the parent county, retains the same county seat and a part of the territory and inhabitants of the parent county. It is contended by plaintiff in error that the section of article 17 of the Constitution giving the boundaries of Woods county, makes no reference to Woods county as having existed under the territorial form of government but as to counties like Blaine, Canadian, Cleveland, Custer, Dewey, Grant, Kay, Kingfisher, Lincoln, Logan, Noble, Oklahoma, Payne, Pottawatomie, Pawnee, and Washita, reference is made to such counties as they existed under the territory of Oklahoma. True, that as to "Payne county"

it is referred to as it "now exists under the territory of Oklahoma" with certain townships detached therefrom, and that as to "Noble county" it is referred to as it "now exists under the territory of Oklahoma" with certain townships attached thereto, and with reference to Caddo county in the same article, whilst said county remains as it existed under the territory of Oklahoma, with the exception of the portion that was detached on the east, yet it is specifically described by metes and bounds, and in like manner Comanche county, wherein certain designated territory was detached on the southwest corner and on the east side, reference is not made thereto as the county existed under the territorial form of government, with certain fractional parts detached, but its territory is described by metes and bounds. You will observe the same as to Greer county, and also Roger Mills, Woodward, and Beaver counties. As to Woods county the effect would have been the same had the county been described: That portion of Woods county as it existed under the territory of Oklahoma except a certain designated portion detached creating Alfalfa and Major counties, and also that described territory detached from Woodward county as it existed under said territory and therein annexed to Woods county. The only difference is a matter of taste; the legal effect is the same.

In the case of *Commissioners of Crawford County v. Commissioners of Marion County*, 16 Ohio, 467, it is said:

"The political organization of the county of Crawford was not destroyed by the act of 1845, creating the new county of Wyandot. The act organizing the county of Crawford has never been repealed. It cannot, therefore, be contended that Crawford is a new county. * * * The identity of a county does not depend upon its territorial boundaries, but its political organization. * * * A change of boundary is not the erection of a new county. If its political organization continues, its identity is preserved; its existence dates from the act erecting it, and not the act which may change its boundaries. But in the present instance it was not the design of the Legislature to destroy Crawford county, or create it into a new county. If it was destroyed at all, it is by a construc-

tion of the act in reference to the Constitution, holding that reducing its old limits below the constitutional quantity destroyed the county, and that adding thereto new territory to make up the deficiency created a new county. Such was not the object or intent of the Legislature; nor are we authorized to construe the act to effect that result."

Beyond question, upon the admission of Oklahoma into the Union, with her Constitution and organized government, the territorial government was displaced and all its powers and jurisdiction abrogated, except as the same remained or continued in force by virtue of provisions of the Constitution. The authority of the state was destructive of that of the territory, except as the organic law of the state continued such territorial authority or organization, but it was within the sovereign power of the people of the proposed commonwealth, through its constitutional convention, to provide that counties organized or existing under the territorial form of government should continue and be a body corporate and politic under the state government, succeeding to all the rights of such county under a territorial form of government. If we had any doubt as to this having been done, however, the same would be removed by sections 9 and 25 of the Schedule, which we hereinafter set out, to wit:

"All judgments and records of deeds, mortgages, liens, and other instruments, filed or recorded, affecting title to real and personal property in new counties that have been created out of the territory of any county or counties of the territory of Oklahoma, or out of any county or counties of the territory of Oklahoma and of any recording district or districts of the Indian Territory, are hereby made as effectual to impart notice and for all other purposes under the laws of the territory of Oklahoma, extended in force in the state, as the same would have been if no changes had been made by the provisions of this Constitution in the boundaries of the counties as they existed in the territory of Oklahoma, or of the boundaries of the recording districts as they existed in the Indian Territory." (Section 9 of the Schedule.)

How can we reconcile the words, "are hereby made as effectual to impart notice and for all other purposes under the laws of the

territory of Oklahoma, extended in force in the state, as the same
would have been if no changes had been made by the provisions
of this Constitution in the boundaries of the counties as they ex-
isted in the territory of Oklahoma," without reaching the conclu-
sion that it was intended that the counties as bodies corporate and
politic should continue under the state government?

"Any county, city, incorporated town, township, board of
education, school district, or other municipality, either in the terri-
tory of Oklahoma or the Indian Territory, that shall owe, at the
time of the admission of the state into the Union, an indebted-
ness, evidenced by warrants, scrip, or other evidence of indebted-
ness, is authorized, through the proper officers thereof, to make
provision for the payment. of, and to pay such indebtedness, either
by tax levy or issuing bonds in lieu thereof, in accordance with and
under the provision of the laws extended ·in force in the state:
Provided, that the limitation upon the amount of indebtedness that
may be created by any county, city, incorporated town, township,
board of education, school district, or other municipality, and upon
the amount of taxes that may be levied by any county, city, in-
corporated town, township, board of education, school district, or
other municipality, under the provisions of this Constitution, or
of law, shall not apply to the indebtedness, the levying of taxes,
and the issuing of bonds provided for herein." (Section 25 of
the Schedule.)

How could *any school district* or *other municipality* (which
includes organized counties), that owed indebtedness at the time
of the admission of the state into the Union, make provision for
the payment or refunding of such indebtedness without such body
corporate continuing its existence under the state government?
And how could such county have "proper officers" under the state
government, without existing as a county or body corporate under
such government?

The Legislature of the state of Oklahoma has unquestionably
made a similar interpretation in what is known as "Senate Bill
No. 85," "An act to provide for the collection of taxes in the year
1907 in new counties where the same had been created in whole
or in part out of the old counties in that part of the state formerly

the territory of Oklahoma." Section 1, 2, and 3 of said act are as follows;

"That in all the new counties created in whole or in part out of old counties existing in that part of the state formerly the territory of Oklahoma, before the admission of the state into the Union, the county commissioners of such new counties shall be authorized and empowered to transcribe all that part or parts of the tax roll of the parent county or counties affecting the taxable property within such new counties, and when so transcribed and approved by the commissioners' court of such new county, the said tax rolls shall constitute and be the tax rolls of such new county for the purpose of collecting the taxes on all taxable property as therein shown for the year 1907." (Section 1.)  .

"All new counties as described in section 1 of this act shall succeed to and have all of the liens, rights and authority in the collection of taxes through the proper officers thereof as herein specified, for the year 1907, as the parent county or counties might have had, before the division thereof and where by law said old or parent county or counties of the territory of Oklahoma or any school district, municipal township, city, town or village, would have had a lien on property assessed by said old county or counties for the year 1907, and appearing on said tax duplicate or roll for the year 1907, the said lien shall be transferred to and exist in favor of said new county or counties and the several municipal subdivisions thereof." (Section 2.)

"When the tax rolls of said new counties shall have been made up and transcribed and approved as herein provided, the same shall be delivered to the county treasurer of said new county and said treasurer shall proceed to the collection and disbursement of the taxes appearing thereon as is now or may be provided by law, provided, that the new county shall bear the expense of making said tax roll, provided that nothing in this act shall be construed to prejudice the rights of any counties affected hereby to hereafter adjust their liabilities and assets among themselves as provided by the Constitution." (Section 3.)

We conclude that Woods county, under the Constitution of the state of Oklahoma, succeeds to the property of said county under the territory of Oklahoma, except such as may be located and situated within the territory detached therefrom, subject to the

provisions of sections 20 and 38 of the Schedule, and any act or acts of the Legislature enacted pursuant thereto. Said section 20 of the Schedule, not being self-executing, had neither any application to this case on the 13th day of November, 1907, the date on which it was instituted (three days prior to the admission of the territory of Oklahoma and Indian Territory into the Union), nor at the present time, except to shed light on interpreting and construing the provisions relating to new and old counties. Said section 38 of the Schedule likewise has no other application.

But the contention might be made that the Legislature, in Senate bill No. 85, entitled "An act to provide for the collection of taxes for the year 1907 in new counties," etc., *supra*, having provided that all such counties should succeed to and have all the liens, rights, and authority in the collection of taxes through the proper officers thereof as therein specified for the year 1907 as the parent county or counties, etc., was a partial compliance with section 20 of the Schedule, and therefore ousted the Supreme Court of the contingent original jurisdiction provided for in said section 38. It is, however, not necessary to determine that question in this case.

It follows, therefore, that the decree of the court below should be affirmed, and it is so ordered.

All the Justices concur.