WILHITE v. MANSFIELD *et al.*

No. 338.    Opinion Filed February 16, 1909.

(99 Pac. 1087.)

**COUNTIES—Organization of New County—Adjustment of Rights— High Schools.** Under act of the Legislature of the territory of Oklahoma, approved March 8, 1901, (Sess. Laws 1901, p. 187, c. 28, art. 1 [Wilson's Rev. & Ann. St. 1903, sec. 6219-6223]), a high school was established in Woods county at Helena under the territory of Oklahoma, and by section 8, art. 17 (section 337, Bunn's Ed.; Snyder's Ed. p. 342), of the Constitution of Oklahoma, there was detached from the territory formerly . embraced by Woods county the county of Alfalfa, embracing the place where said high school was located.    Held, that it became the high school of Alfalfa county, and that it was the duty of . the board of county commissioners of said county to appoint trustees thereof.

Hayes, J., dissenting.

(Syllabus by the Court.)

Application of E. S. Wilhite for a writ of mandamus to M. R. Mansfield and others.    Writ awarded.

On the 7th day of August, A. D. 1908, the plaintiff, E. S. Wilhite, of Alfalfa county, for himself and all other resident taxpayers similarly situated, instituted this action for peremptory mandamus to compel M. R. Mansfield, John Zimmerman, and J. C McWilliams, as the board of county commissioners of Alfalfa county, to appoint trustees for what is alleged to be the high school of Alfalfa county, situated at Helena therein.    He alleges that ever since the 16th day of November, A. D. 1907, he has been an actual resident and taxpayer of Alfalfa county, Okla., having a

son and daughter who are entitled to attend the county high school at Helena in said county, and that prior to the 16th day of November, A. D. 1907, he has been an actual resident and taxpayer in the then county of Woods, territory of Oklahoma, for more than four years; that prior to November 16, A. D. 1907, the territory embracing Alfalfa county was a part and parcel of Woods county, Okla. T., and that, under and by virtue of the provisions of the Constitution of Oklahoma, Alfalfa county embraces territory which prior to November 16, A. D. 1907, was included in Woods county, Okla. T.; that prior to the 8th day of November, A. D. 1904, the then board of county commissioners of Woods county, Okla. T., having investigated the matter of the establishment of a high school near Helena in said county, and having exercised their discretion and judgment in the matter regarding the matter to be submitted to the voters of said county according to law, after resolution duly passed to give due and legal notice of the submission of the question as to whether or not the high school should be established at the town of Helena in said county to the qualified voters therein, as required by section 2, art. 1, c. 28, p. 187, of the Session Laws of said territory for 1901; that at said election held in said county on the 8th day of November, A. D. 1904, said proposition as to the establishment of said high school at said place was submitted to the qualified voters of said county, and was duly and legally voted upon by the electors, and that the returns of said election have been duly canvassed by proper officers and made to the then board of county commissioners of Woods county in said territory, and the result of said election announced and made of record; that at said election there were cast, canvassed, and counted for the establishment of said high school for the county of Woods at Helena 2,509 legal votes, and against the establishment of said high school 2,140 votes, a majority of the votes of what is now Alfalfa county having been cast in favor of the establishment of said high school, and said question as to the establishment of said high school carried by a majority of 369 votes; that the result of said election was duly announced, and the high school established

at the town of Helena in said county, under and by virtue of the provisions of chapter 28, p. 187, of the Session Laws of the territory of Oklahoma for the year 1901. He further alleges that six qualified property owners were appointed a board of trustees, and that they qualified and entered upon the discharge of such duties, procured a site for the erection and construction of said high school building, and caused the building to be constructed in which to conduct the school, and purchased the supplies, materials, and equipment for said school; that ever since said building was constructed and said school furnished with the necessary equipment it has been a going and flourishing institution, located in the town of Helena; that said board of trustees of said high school contracted for an expenditure of about $20,000, which was a reasonable, legal, and proper expenditure; that since the 16th day of November, A. D. 1907, vacancies have occurred in the office of the board of trustees of said school, and that at the present time there is no board of trustees authorized to act as such for said high school, and that it is necessary that a board of trustees for said school be appointed immediately in order that said board may immediately reorganize and employ a suitable person to take charge of said school as principal and employ such assistant teachers as may be necessary, provide salaries therefor, and appoint a secretary and treasurer, who shall perform such duties devolving upon such officers as required by law, and that they shall proceed to make an itemized estimate of the amount of funds needed for the payment of teachers' wages and contingent expenses, and other necessary expenses which may be incurred in the conduct of said school for the coming year, and that they shall present to the board of county commissioners of Alfalfa county certified estimate of the rate of tax required to raise the amount necessary for such purpose, as required by law.

It is further alleged that under the provisions of the act of the Oklahoma Legislature, approved April 10, A. D. 1908 (Laws 1907-08, p. 280, c. 26, art. 2), the title to the high school building erected at Helena has become the property of Alfalfa county, and that the

school located at Helena became and is a part and parcel of Alfalfa county, and that the board of county commissioners of said county should appoint a board of trustees as provided by law, in order that such high school may be a going and existing institution.

Plaintiff further alleges that he made demand for the appointment of the trustees of said high school, and that the board of county commissioners refused to make such appointment.

The county attorney of Alfalfa county, acting for the board of county commissioners, entered into an agreed statement of facts, which supports the foregoing allegations.

L. A. Salter, F. N. Winslow, W. T. Barrett, A. J. Titus, A. H. Stroud, Luther Martin, J. W. Howard, and S. B. McFadden, having obtained leave of this court, intervened in this action, and alleged that they were residents of Alfalfa county, and owners of property aggregating the value of $250,000, which was subject to taxation. They demurred to the sufficiency of plaintiff's complaint and the agreed statement of facts, insisting. that on the facts alleged and agreed to by the county attorney the plaintiff was not entitled to the writ of mandamus to compel the board of county commissioners of Alfalfa county to appoint trustees for the alleged high school, and that there is no high school in Alfalfa county.

*Parker & Simons,* for plaintiff.—The county high school in question — the *institution* as well as the buildings — became the property of Alfalfa county: *Winslow v. France,* 20 Okla. 303; *Com's of Laramie County v. Com's,* 92 U. S. 307; *Parsons v. Winslow,* 1 Grant's Cas. (Pa.) 159; *County of Lackawanna v. Stevens,* 105 Pa. St. 465; Endlick, Interpretation of Statutes, § 73; Bunn's Const. §§ 275, 450, 451; Sess. Laws Okla. 1901, p. 187; Sess. Laws Okla. 1907-08, p. 280.

*Ledbetter & Moore,* and *W. Wilder,* Co. Atty., for defendants and interveners, contended that, though the high school *building* became the property of Alfalfa county, the school as an *institution* did not, and no legal authority existed for the operation and maintenance of such high school by Alfalfa county—citing *Atty. Gen.*

*ex rel. v. Fitzpatrick,* 2 Wis. 397; *People v. Morrow,* 21 Wend. (N. Y.) 563.

WILLIAMS, J. (after stating the facts as above). The act of the Legislature of the territory of Oklahoma, approved March 8, 1901 (Sess. Laws 1901, p. 187, c. 28, art. 1 [Wilson's Rev. & Ann. St. 1903, §§ 6219-6223]), provides that each county in the territory of Oklahoma having a population of 6,000 inhabitants or over may establish a high school, the same to be located at a place in such county to be determined by the voters thereof; that the county commissioners shall appoint trustees for such high school, and that the superintendent of such county shall be *ex officio* president of such board of trustees; that said board of trustees shall make an itemized estimate of the amount of funds needed for buildings, payment of teachers' wages, and contingent expenses, and present to the board of county commissioners a certified estimate of the rate of tax required to raise the amount for such purposes. Said act was extended to and remained in force in the state of Oklahoma after its admission into the Union (Schedule to the Constitution, § 2 [Bunn's Ed. § 451]).

Section 20 of the Schedule to the Constitution (Bunn's Ed. § 469), provides that the Legislature shall provide by general, special, or local law for the equitable division of the property, assets, and liabilities of any county existing in the territory of Oklahoma between such county and any new county or counties created in whole or in part out of the territory of such county. Section 32 of the Schedule also provides that the Legislature shall provide by general, special, or local law for the equitable division of the property, assets, and liabilities of any school district existing in the territory of Oklahoma between such school district and any new school district created in whole or in part of the territory of any such school district as may be affected by a change in the county boundaries under the Constitution.

It is evident from the foregoing provisions that it was the intention of the constitutional convention that schoolhouses, as assets of school districts, should bear the same relation, when situ-

ated in a portion of the district segregated and included in a new county, as a county high school building when located in that portion segregated from the parent county and included in a new county. That portion of such school district that may be segregated and included in a new county, as an entity, is to be recognized as such by the Legislature in providing for an equitable apportionment of the assets between it and the remaining portion of such district remaining in the parent county.

In the case of *Winslow v. France*, 20 Okla. 303, 94 Pac. 691, this court said:

"It is well settled that if a new county is created out of the territory of an old county, or if part of its territory or inhabitants is annexed to another county, unless some provision is made in the act respecting the property and existing liabilities of the old county that the old county owns all the public property except such as may be located within the detached territory."

The county high school building in this case is located within that portion of the territory detached from the parent county and included in Alfalfa county. The county high school building and the place or land upon which same may be located is public property, and under the rule laid down in the case of *Winslow v. France, supra,* subject to the authority of the Legislature to otherwise provide, the building and the site became the property of Alfalfa county, and in accordance with section 20 of the Schedule *supra,* bears the same relation to Alfalfa county that a school district, under section 32 of the Schedule, *supra,* when located in the detached territory, would bear to such detached district. Such school building would be a school building for that portion of the detached school district, and the high school building here involved in like manner becomes the high school building for that portion of the territory formerly embraced in Woods county that was detached and now comprises the county of Alfalfa.

Section 9, art. 10 (section 275, Bunn's Ed.; Snyder's Ed. p. 299), of the Constitution, provides that "any county may levy not exceeding two mills for county high school and aid to the common schools of the county, not over one mill of which shall be for

the high school. * * * " The act of the Legislature of Oklahoma Territory approved March 8, 1901, *supra,* is subject to this tax limitation, but, except as said act is repugnant to said provision of the Constitution, it applies, and furnishes a rule for the maintenance and government of county high schools then or thereafter to be established.

It is an approved rule of construction that an instrument must be considered as a whole, in order that the intent thereof may be ascertained, and this construction must be made, if it reasonably can, with a view of giving effect to every provision thereof. To enable one to reach a proper determination as to the meaning of such provisions, we may look to the general purposes that were sought to be accomplished by such instrument. See *Nance v. Southern Ry. Co.* (N. C.) 63 S. E. 116. Upon the admission of a territory into the Union, under a Constitution and a government organized thereunder, the original territorial government is displaced, and all its powers, jurisdiction, and machinery abrogated, except as the same are continued in force by virtue of some provision of the Constitution. It was the general purpose of the Constitution of Oklahoma to continue in force the territorial government, except as it was repugnant to some of its provisions, until otherwise provided by some act of the Legislature. The law by which county high schools were created was continued in force, and high school buildings, when new counties were created out of territory detached from old counties, falling within the territory included within the new county, became the property of the new county. Bridges, likewise, when located on highways in territory detached and included in new counties, became the property of the new county. School buildings, when included in that portion of school districts detached and included in a new county, became the property of the school district in the county, and by the continuance of the laws under which the bridges were built and maintained, and the schoolhouses and the high school buildings were constructed and maintained, it was the intent that such

bridges, schoolhouses, and high school buildings should be maintained and supported in the future, and not discontinued.

To contend that the county high school remained as the high school of Woods county without a high school building, or the control or ownership of the place or site on which it was located, if sustained would lead to absurd results. Evidently it was the purpose of the framers of the Constitution that local governments should neither be destroyed, disarranged, nor interfered with, except where such changes were incident to the change in the form of government, or where the statute by virtue of which they existed and were maintained was repugnant to some provision of the Constitution. School district, township, and municipal governments, and county high schools in counties that were not divided, beyond any question were preserved and brought over by the provisions of the Constitution. And, where a county high school was located within territory detached from the parent county and included in a new county, it was not contemplated by the constitutional convention that statehood should be destructive of such high school. The high school building and site in question became the property of Alfalfa county, and, for the reasons hereinbefore set out, we conclude that it is the duty of the county commissioners of said county to appoint trustees thereof, the county superintendent of said county becoming *ex officio* president of said board.

The writ is awarded.

Kane, C. J., and Dunn and Turner, JJ., concur; Hayes J., dissents.