## LIBERTY TP. v. ROCK ISLAND TP.

No. 3489. Opinion Filed December 8, 1914.

(144 Pac. 1025.)

1. **TOWNS—"Township"—Powers.** A "township" is an involuntary territorial and political division of a state, organized as a quasi municipal corporation for the exercise of a portion of the state's political power, with little independent corporate life.

2. **SAME—Townships — Disposition of Property — Legislative Powers.** Property held by a municipal or quasi municipal corporation in its public or governmental rights, as a trustee or agent of the state, as contradistinguished from its private or proprietary right, is subject absolutely to the legislative will in respect to its disposition.

3. **SAME—Organization of New Townships—Interest in Park.** When the Legislature has, by special enactment, permitted a township to acquire a park within its boundaries for general park purposes and for the use of all political, religious, and other societies, as well as "for the purpose of holding a fair, or fruit, poultry, or other shows." for which an admission may be charged, with "booths and other privileges," for which a license fee may be charged, all under the government and control of a board of commissioners thereby authorized to be elected as other township officers are, the revenue derived therefrom to go into the treasury of such township, the township holds such park in its public or governmental right in

respect to the disposition of the same in a division of said township in accord with statutory authority by erecting a new township out of a portion of its territory not including such park, and the new township can have no cause of action arising out of such division in the absence of statutory grounds for the same.

(Syllabus by Thacker, C.)

*Error from District Court, Grant County;*

*Wm. M. Bowles, Judge.*

Action by Liberty Township, a municipal corporation of Grant County, against Rock Island Township, a municipal corporation of Grant county, for an interest claimed in a park formerly within the boundaries of and owned by both townships then comprising one township. Judgment for defendant, and plaintiff brings error. Affirmed.

*C. S. Ingersoll* and *Sam P. Ridings,* for plaintiff in error.

*Parker & Simons,* for defendant in error.

Opinion by THACKER, C. The plaintiff in error (Liberty township, of Grant county) brought this action against the defendant in error (Rock Island township, of the same county) for a portion of a park of 60 acres of land within the boundaries of the defendant, or, if that relief could not be granted, for a share of the rents and profits derived from the same; and upon a sustention of defendant's demurrer to its petition elected to stand thereon and brings the case here for review upon the judgment accordingly rendered against it.

It appears from the petition that under a legislative act of March 12, 1897 (sections 5874-5885, Wilson's Rev. & Ann. Stat. 1903), plaintiff acquired twenty acres of land; and under a legislative act of February 27, 1903 (Sess. Laws 1903, pp. 215, 216), it acquired the 40 acres additional for the same purpose. The said acts authorized the defendant to acquire said land for the use of the public, presumably for general park purposes, and for the use of all political, religious, and other so-

cieties; also, "for the purpose of holding a fair, or fruit, poultry or other shows," for which an admission fee might be charged, and authorizing license fees for "booth and other privileges." The first of said acts provided for a board of three commissioners, to be elected as other township officers, to provide rules and regulations for and to govern and control the park, including the buildings thereon.

In February, 1911, the defendant township was divided into two townships (under the sixth subdivision of section 1815, St. Okla. 1890, as amended by Sess. Laws 1897, pp. 116-118, and found in the fifth subdivision of section 1600, Rev. Laws 1910, and section 1845, St. Okla. 1890; section 8173, Rev. Laws 1910); and the plaintiff was thus created out of the east half of the original territory within the boundaries of the defendant, the said park lands being within the bounds of defendant and abutting on plaintiff's west boundary line.

In *Union Township v. Oakdale Township,* 30 Okla. 708, 120 Pac. 968, 39 L. R. A. (N. S.) 284, it is held:

"Where a new township is created out of a part of the territory of an old one, unless some provision is made in the act creating the new or exists under the statute respecting the property and existing liabilities of the old township, the old township retains the title to all the public property, except such as may be located in the detached territory, and is responsible for the debts contracted before the division."

In support of that rule, that case cites *Winslow v. France,* 20 Okla. 303, 94 Pac. 689, and *Wilhite v. Mansfield et al.,* 23 Okla. 246, 99 Pac. 1087. Also, see 1 Municipal Corporations, by Dillon (5th Ed.) secs. 359, 360.

In *Pass School District of Los Angeles County v. Hollywood City School District of Los Angeles County,* 156 Cal. 416, 105 Pac. 122, 26 L. R. A. (N. S.) 485, 20 Ann. Cas. 87, the said rule was apparently predicated upon the view that a school building is held by the district in which it is situated as a trustee of the state, that is, for state governmental purposes, and not in the merely private or proprietary right of the district as a

corporation. And, as indicated by *Cummings v. Lobsitz,* 42 Okla. 704, 142 Pac. 993, and *City of Wellington v. Township of Wellington et al.,* 46 Kan. 213, 26 Pac. 415, also as shown in Municipal Corporations, Dillon (5th Ed.) secs. 109-112, 115, 131, · 335, there is a distinction to be observed between the public or governmental and the private or proprietary right in which a municipality holds property as affecting the question of municipal independence in respect to the same, or, in other words, the question of its freedom from legislative control and its consequent subjection to the judicial power of the state when controverted questions of right in respect to a disposition of it arise.

Ordinarily, it seems that where property is held by a municipality in its purely private or proprietary right, as contradistinguished from its public or governmental right, it is within the judicial power of the state to determine all questions growing out of conflicting claims of right in respect to a disposition of the same.

But a township is an involuntary territorial and political division of the state organized for the exercise of a portion of the political power thereof. 38 Cyc. 598. It is only a quasi municipal corporation with little independent corporate life, and with only "such powers and functions and is subject only to such liabilities as are provided by statute." *Id.* Also, see 38 Cyc. 611.

In running the scale from the highest to the lowest forms of municipal-corporate life, such divisions of the state appear to be progressively more completely subject to the legislative and less subject to the judicial power of the state in respect to their property rights; or, in other words, as between such corporations and the state, the former is regarded as progressively farther removed from a relation in which it may assert contractual rights against the state in respect to its rights in property, and its rights in property progressively partake more of a public or governmental and less of a private or proprietary character with such decrease in independent corporate life.

In 1 Municipal Corporations, Dillon (5th Ed.) sec. 116, it is said:

"Public parks, gas, and water in towns and cities may ordinarily be classed as private affairs, but they often become matters of public importance, and, when the Legislature determines that there is a public necessity for their use in a certain locality, it has been said that they cannot be designated as the mere private affairs of the corporation."

In section 117, *Id.,* it is said:

"It has been held that, although *title* to the land within a city forming a public park *is vested in a city, the control of the public parks belongs primarily to the state.* The authority which the common council or park commissioners of a city may exercise in the control or management of public parks is not derived from the citizens of the municipality within the limits of which such parks are situated, but from the Legislature. Such parks are held, not for the sole use of the people of a particular municipality, but for the use of the general public which the Legislature represents. Municipalities in controlling and managing such public parks act as a governmental agency exercising authority delegated by the state, and are always subject to legislative control. By virtue of its control over the public parks the Legislature possesses the power to authorize a municipality to devote it to a use which is inconsistent with park purposes, so long as such inconsistent use is some other and higher public purpose which will render its enjoyment by the public more extended and general."

Then, too, the same subject, it seems, may be regarded as public or governmental in one aspect and private or proprietary in another. See *Id.*

In its aspect as subject of the conflicting claims of right in the present case, we think the park lands are held by the township as an agent or trustee of the state.

We think the park in question was held for public and governmental purposes, and not in the private or proprietary right of the township; that, since a division of the townsnip in which it was acquired and located in accord with legislative authority, such property belongs to the township in which it is situated; that the new township has been divested of no private

or proprietary right by the old one, and therefore cannot maintain this action against the latter; and that the question presented for adjudication by the plaintiff's petition is in its last analysis not one of law or equity between these two townships, but one of legislative wisdom, of which the courts cannot take cognizance.

For the reasons stated, the judgment should be affirmed.

By the Court: It is so ordered.