[No. 3572. July 1, 1931.]
ANDERSON v. CLARDY et al.
[1 Pac. (2d) 120.]

W. H. Patten, of Lovington, for appellant.

Tom W. Neal, of Lovington, for appellees.

OPINION OF THE COURT

WATSON, J.

The parties are rival claimants to certain lands now in Lea county, but prior to the creation of that county (Laws 1917, c. 23; 1929 Comp. § 33-1201 et seq.) in Eddy county. Each party sought to quiet his title. Plaintiff relied on a chain of title originating in a government patent. Cross-plaintiff relied on a tax deed. The latter prevailed, and the former appeals.

Two attacks are here directed at the judgment: First. That the right to sue upon the tax deed was barred by the ten-year statute of limitations (1929 Comp. § 83-122). Second. That title to the land vested in Lea county upon its coming into existence, June 18, 1917, and that Eddy county had nothing it could convey by assignment of the certificates of sale or by deed.

Both of these contentions are based upon Laws 1899, c. 22, § 23, which was in force when the sales took place. Appellant relies upon these provisions of that section:

"Such certificate * * * when so recorded, shall vest in the purchaser, his heirs or assigns, a complete legal title to the real estate described therein. * * * Counties purchasing at tax sales shall be deemed purchasers within the meaning of this act."

Appellant contends that, as a county is a body corporate, with power to sue and to be sued, and to purchase, hold, and sell property (1929 Comp. § 33-3601), it is not a mere civil subdivision, but a competent proprietor of property, and that, as to the property in question, being the holder of "complete legal title," the statute of limi-

tations is as applicable as if it were a mere private corporation. While mentioning Hagerman v. Territory, 11 N. M. 156, 66 P. 526, he contends that it is not decisive.

Applying his legal proposition to the case he claims that the property was struck off at tax sales to Eddy county for the taxes of 1909,.on January 16, 1911, and for the taxes of 1910, on February 26, 1912; that these certificates, originally issued to Eddy county, were assigned September 23, 1918, and deed issued thereon February 2, 1924; that he was in adverse possession of the land from April 28, 1913, when he acquired title to it, until February 4, 1924, when appellee ousted him; that by this adverse possession of more than ten years, appellee's right of action is barred.

There seems to be an error in appellant's computation. By the express provision of section 23, upon which appellant relies, the former owner might retain possession until expiration of the redemption period, which, as to the 1909 taxes, would have been until January 16, 1914. Until then appellant's possession could not have been adverse. See Chambers v. Bessent, 17 N. M. 487, 134 P. 237. Nevertheless, adverse possession from January 16, 1914, to February 4, 1924, would have been sufficient.

 Appellant is not in a position, however, to prevail upon this point. If his legal proposition has merit, a question which we do not decide, it is dependent upon his claim to have been in adverse possession within the meaning of the statute of limitations. There were no findings from which it can be determined that such was the case, and no findings of any kind seem to have been requested. McKee v. Woods, 35 N. M. 168, 291 P. 292; Harris & Maldonado v. Sperry, 35 N. M. 52, 290 P. 1022, and cases cited.

 Coming now to appellant's second proposition: He again invokes the above-quoted provisions of Laws 1899, c. 22, § 23; following it with the proposition that a new county created by taking territory from an existing county, takes title to real estate situated within it, formerly owned by the old county, unless the legislature has otherwise provided. He cites Laramie County v. Commission-

ers of Albany County, 92 U. S. 307, 23 L. Ed. 552; Wilhite v. Mansfield, 23 Okl. 246, 99 P. 1087; Pass School District v. Hollywood City School District, 156 Cal. 416, 105 P. 122, 26 L. R. A. (N. S.) 485, 20 Ann. Cas. 87; Union Township v. Oakdale Township, 30 Okl. 708, 120 P. 968, 39 L. R. A. (N. S.) 284; Washington County v. Weld County, 12 Colo. 152, 20 P. 273.

Thus we are offered a simple formula for the solution of the problem. By virtue of its purchase at tax sale, Eddy county had "complete legal title." It passed to Lea county on its creation, through failure of the Legislature to provide otherwise. Is the matter to be settled thus out of hand?

Appellee contends that we laid down a contrary rule in Commissioners of Lea County v. Commissioners of Chaves County, 23 N. M. 469, 169 P. 306, where we also had under consideration the act creating Lea county. We did say that the old county retained "all the corporate property" unless otherwise provided by statute. But the statement was broader than the case required. We were there dealing only with the rights of the respective counties in unpaid taxes. Undoubtedly there is considerable authority for appellant's proposition, and we are not disposed to question it as we find it to have been applied. Yet we cannot forbear the natural inquiry as to the reason which has induced courts to declare that, without express legislative fiat, and upon the mere implication to be drawn from silence, title and ownership have passed from one body politic and corporate to another.

It seems to us that two considerations must have moved the courts to the declarations and decisions on which appellant relies. In the first place, while counties are competent to hold property by legal title, they are not generally authorized to acquire it except for proper public use. They hold it in a sort of trust for the state or the people. So, when the courts say that the old county has lost title and the new county has gained it, they merely substitute one trustee for another. In the second place, if the property is a public park or a schoolhouse or a bridge, or anything permanent and practically irremov-

able, only the new county and its people can have use for it, and it would be contrary to common sense to imply an intent that the old county, having no use for it and no interest in maintaining it, should retain ownership of it.

If such be the basis of the rule invoked, the property here in question does not necessarily come within it. It was not acquired for any public use. It was acquired only in the course of securing and collecting the public revenues. It was to be disposed of to the first comer offering to make good the taxes assessed and the statutory charges. The fact that it is land to which said county had "complete legal title" we do not think controlling. Considering the mode of acquisition and the use and disposition to be made of it, as dictated by the tax laws, we are inclined to the view that it belongs in the class of property which the old county retains merely because no different intent has been expressed.

It is everywhere stated or assumed that the matter is one within legislative control. If so, it is not within control of the courts. Since courts have adjudged that former titles have been extinguished and new titles arisen, it must be upon the view that such was the legislative intent, to be implied from its silence. It results that it is the legislative intent that we seek, as well in a case of silence as in one of attempted expression. In seeking the intent, then, we should consider the conditions existing and those which would result from an application of appellant's formula to this case.

If this formula were to be adopted, it would follow that, as to real estate in Lea county which had been struck off to Eddy county under the 1913 tax laws, Lea county would have no interest. Under that act, the certificate of sale did not pass title. Wilson v. Matson, 25 N. M. 67, 177 P. 746. A peculiar and confusing situation would result. A part of the property represented by tax sale certificates held by Eddy county would remain to it, and a part would pass to Lea county. This would not be an apportionment made to depend upon population, area, assessed valuation, or any other natural basis. It would

be a haphazard result, dependent upon the accident of whether the property in question had accrued under one or the other of two successive revenue codes.

Such result might prove unjust as well as confusing. The Bateman Act, 1929 Comp. § 33-4241 et seq., dedicates a portion of the proceeds of the sale of the certificates in question to possible deficits in county current expenses for the years 1909 and 1910. We have not found in the act creating Lea county any provision for making up a possible loss to Eddy county's creditors if this resource should be taken away.

In view of the numerous broad expressions of text and decision to the effect that the title to real property situated within the new county passes to it, it might be urged that it was the legislative intent, by its silence upon the subject, to permit that rule to operate; just as one content that the laws of descent and distribution should operate upon his estate, forbears to make a will. The considerations just urged, it seems to us, preclude this view, and support the view that the Legislature overlooked the technical distinction between the two classes of tax sale certificates and did not anticipate any such question as is here presented.

Pursuing the matter of the legislative intent, some weight we think should be given to the construction which the three counties involved, the parties mainly interested, have placed upon the statute, during these more than thirteen years. In her suit against Chaves county, Lea county seems to have laid no claim to the "moneys accruing * * * from taxes upon property" through sales of tax sale certificates. We assume that she has acquiesced in their appropriation by Chaves and Eddy counties, respectively. We do not know of any occasion on which she has asserted ownership of lands embraced in such certificates. If such be the case, the present application of appellant's formula would doubtless result in the disturbance of numerous titles.

So viewing the matter, we cannot sustain appellant's contention, even if it be true in general that, in the ab-

sence of legislative direction, the title to real property situated within the new county passes to it—a proposition upon which we express no opinion.

The judgment will be affirmed, and the cause remanded. It is so ordered.

BICKLEY, C. J., and SADLER, J., concur.

PARKER and HUDSPETH, JJ., did not participate.