## BOARD OF EDUCATION OF FULTON COUNTY *et al. v.* BOARD OF EDUCATION OF COLLEGE PARK.

1. The act of the General Assembly approved August 14, 1908, amending the charter of College Park, is not violative of par. 1 of sec. 4 of art. 8 of the constitution of Georgia (Civil Code, § 6579), as special legislation upon a matter which is covered by general law.
2. Nor does the act violate par. 8 of sec. 7 of art. 3 of the constitution (Civil Code, § 6437), in that it is an effort to create two corporations in the same act, thus referring to more than one subject-matter in the same law.
3. Where a municipality is authorized by the General- Assembly to create a public-school system coextensive with its corporate limits, a part or all of which territory has theretofore been included within the system of public schools operated by the county, forming a portion of a school district, the municipality succeeds to the control of educational matters and to the title to the real estate held as public-school property within its territory, holding such title as a statutory trustee or public agent.
4. None of the assignments of error require a reversal of the judgment of the court below.

No. 526.  April 11, 1918.

Injunction. Before Judge Pendleton. Fulton superior court. July 17, 1917.

By an act of the General Assembly (Acts 1908, p. 555) the Board of Education of the City of College Park was created, and a system of public schools was authorized within its limits. The City of College Park is partially situated within the County of Fulton, and previously to the passage of the act of 1908 the territory comprised within the part of College Park which is in Fulton County was within a school district of Fulton County and within the jurisdiction of the Board of Education of Fulton County. Within that territory are located certain school lots which had been purchased and improved by the Fulton County school board. Buildings were erected thereon and used for school purposes by the board. Subsequently to the creation of the school system of. College Park the Board of Education of that city filed a petition to enjoin the Board of Education of Fulton County from interfering with the use, possession, and control of the school property located within the jurisdiction of said city board, and from taking any legal steps toward dispossessing or ousting the plaintiffs from the possession; and to obtain a decree of title in the plaintiffs. To this petition the defendants demurred and answered. The superior court passed an order temporarily enjoining the defendants as prayed; to which order exception was taken.

*Mayson & Johnson,* for plaintiffs in error.

*Alfred C. Broom,* contra.

GILBERT, J. (After stating the foregoing facts.)

1. The act of the General Assembly approved August 14, 1908, amending the charter of College Park and providing for a system of public schools (Acts 1908, p. 555), is not violative of par. 1 of sec. 4 of art. 8 of the constitution of Georgia (Civil Code, § 6579), which grants authority to counties, militia districts, school districts, and municipal corporations to establish and maintain public schools in their respective limits by local taxation, upon certain conditions. The act of 1908 does not undertake to create a rural school district, such as is contemplated in what is known as the McMichael act (Civil Code, §§ 1531 et seq.). This is obvious from the plain language employed therein. It is not, therefore, a provision by special act for a matter already covered by a general act of the General Assembly. It provides for a public-school sys-

tem by a municipal corporation, as authorized by the constitution. *Farmer* v. *Thomson,* 133 *Ga.* 94 (65 S. E. 180) ; *Burkhart* v. *Fitzgerald,* 137 *Ga.* 366 (73 S. E. 583) ; *James* v. *Blakely,* 143 *Ga.* 117, 122 (84 S. E. 431).

2. It is contended that the act of 1908, amending the charter of the City of College Park, as above stated, is in effect an effort of the legislature to create two corporations in the same act, and that this is violative of par. 8 of sec. 7 of art. 3 of the constitution of Georgia (Civil Code, § 6437), which reads as follows: "No law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." We think this contention is untenable. The matter of operating a system of public schools is certainly germane and bears a generic relation to the general purpose for which College Park was granted a municipal charter. *Board of Education* v. *Barlow,* 49 *Ga.* 232, 237, where the point is expressly ruled on. It is contended, however, that that case was decided prior to the adoption of the constitution of 1877, and that the constitution of 1868 did not contain the inhibition against the passage of laws containing more than one subject-matter. The vice of this contention is that the act in question does not contain more than one subject-matter. It does contain legislation in regard to different branches of the same subject-matter, all of which are within the legitimate domain of the varied functions necessary for the existence of a municipal corporation. See *Welborne* v. *State,* 114 *Ga.* 793, 817, 818 (40 S. E. 857) ; *Mayor &c. of Americus* v. *Perry,* 114 *Ga.* 871, 877 (40 S. E. 1004, 57 L. R. A. 230) ; *City of Cartersville* v. *McGinnis,* 142 *Ga.* 71 (82 S. E. 487, Ann. Cas. 1915D, 1067). Members of a municipal school board or county board of education are public officers. *Stanford* v. *Lynch,* 147 *Ga.* 518 (94 S. E. 1001). These boards, and others that might be named, are quite uniformly held to constitute quasi corporations, public in their nature. McQuillin on Municipal Corporations, 5074; Whitehead *v.* Detroit, 139 Mich. 490 (102 N. W. 1028) ; *City of Blakely* v. *Singletary,* 138 *Ga.* 632 (75 S. E. 1054). When such a board is expressly made a body corporate it may sue and be sued. *Woodward* v. *Westmoreland,* 124 *Ga.* 529 (52 S. E. 810, 4 Ann. Cas. 472). In the case of *City of Blakely* v. *Singletary,* supra, the board of education was not expressly made a corporate body ; but in that.

case it was decided, nevertheless, that the members of the board were in the nature of statutory trustees and could legally bring mandamus proceedings against the city. Compare Gunnison *v.* Board of Education, 176 N. Y. 11 (68 N. E. 106), and authorities cited.

3. Where a municipality is authorized by the General Assembly to create a public-school system coextensive with its corporate limits, a part or all of which territory has theretofore been included within the system of public schools operated by the county, forming a portion of a school district, the municipality succeeds to the control of educational matters and to the title to the real estate held as public-school property within its territory, holding such title, of course, as a statutory trustee or public agent. The legislature, it is universally conceded, has the power to provide for such division of the school property as may be located within the new territory between the county school board and the municipal board of education as it may deem just and equitable. Mount Pleasant *v.* Beckwith, 100 U. S. 514, 532 (25 L. ed. 699). In Hunter *v.* Pittsburgh, 207 U. S. 161, 178 (28 Sup. Ct. 40, 52 L. ed. 151), speaking of municipal corporations, the court said: "The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. . . The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold. it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the . charter and destroy the corporation. All this may be done conditionally or unconditionally, with or without the consent of the citizens, or even against their protest." The same may be said of school districts and of the property which they hold. At most it is a mere change from one trustee to another, where the General Assembly, in express terms or by necessary implication, transfers the title, control, and use of public-school property from a county board to a municipal board. Where, however, the lawmaking power fails to provide for such division, it is presumed that the intention was to leave it to the courts to declare the law in such cases, in the absence of an agreement between the interested parties. This has been a fruitful source of litigation; and it is con-

ceded that no rule can be adopted which will in all cases afford entire justice to the parties. Laramie County *v.* Albany County, 92 U. S. 307, 315 (23 L. ed. 552). There have been numerous decisions of the courts in the various States, some exactly in point and some closely analogous to the point in this case. Some of the States have met the question with statutory enactments. Except in those States where such statutes have been enacted, the courts have finally arrived at a rule which we have stated above, and which is now well-nigh without exception. We think this the correct rule, and it is undoubtedly founded upon the great weight of authority and argument. In a few States which formerly held to a contrary rule, statutes have been passed abrogating the rule adopted by their courts. For a full discussion of this matter reference is made to Pass School District *v.* Hollywood School District, 156 Cal. 416 (105 Pac. 122, 26 L. R. A. (N. S.) 485, 20 Ann. Cas. 87). As sustaining the rule which we have adopted, directly or in principle, reference is made to Laramie County *v.* Albany County, supra; Mount Pleasant *v.* Beckwith, supra; Hunter *v.* Pittsburgh, supra; Voorhees on Public Schools, § 20; 11 Cyc. 354-361; 28 Cyc. 219-226; 35 Cyc. 821, 850, 852; 15 Am. & Eng. Enc. Law, 1023-1026; 25 Am. & Eng. Enc. Law (2d ed.) 38; Dill. Mun. Cor. (5th ed.) § 359; Tiedeman, Mun. Cor. § 59. The opinion in Pass School District *v.* Hollywood, supra, cites City of Winona *v.* School District, 40 Minn. 13 (41 N. W. 539, 3 L. R. A. 46, 12 Am. St. R. 687), as "the single opposition to an otherwise unbroken current of authority," and states that the ruling in that case is expressly disapproved in Bloomfield *v.* Glen Ridge, 54 N. J. Eq. 276, 280 (33 Atl. 925), and in Prescott *v.* Lennox, 100 Tenn. 591 (47 S. W. 181). It may be added that it has now been modified by statute, and by the decision of State ex rel. *v.* Brown, 56 Minn. 269 (57 N. W. 659). The Pass School District decision also notes that a previous view held by the Supreme Court of Kansas was expressly disapproved in City of Wellington *v.* Wellington, 46 Kan. 213 (26 Pac. 415). So far as we are aware, the State of New Hampshire is the only State in the Union which has consistently adhered to a contrary view. Union Baptist Society *v.* Candia, 2 N. H. 20; Troy *v.* Haskell, 33 N. H. 533; South Hampton *v.* Fowler, 52 N. H. 225; Greenville *v.* Mayson, 53 N. H. 515.

4. It is insisted that the defendants in error are estopped from claiming any title to the property, because of certain agreements entered into by which they were to pay rent for the use of the property to the board of education of Fulton county, and because of certain language found in one of the deeds. As to the principle of estoppel, we do not think it is applicable to a case of this kind, where both of the parties are trustees of the public, and, in a sense, acting as agents of the State; and we do not think there is any merit in the contention as to the wording of the deed in question. As a matter of law, county boards of education and similar boards of municipalities hold title to real estate conveyed to them for school purposes subject to any disposition that the General Assembly may make of it constitutionally; and this is implied as a part of every conveyance to them of such real estate, even in the absence of any express intention of the parties. Hunter v. Pittsburgh, supra. The board of education of Fulton county held title to the real estate as trustees for the people of the State, who, through the General Assembly, had full power, at pleasure, to change its trustees; and that is the effect of the legislation comprised in the act of 1908, supra. It should be noted that we are dealing only with real estate, and such real estate only as is used for school purposes, and not with money or other personal property having no fixed situs.

From what has been said it is our opinion that the trial judge did not err in granting an ad interim injunction, as prayed for in this case; and therefore the judgment is

*Affirmed. All the Justices concur, except Fish, C. J., absent.*