## 37658. UPSON COUNTY SCHOOL DISTRICT et al. v. CITY OF THOMASTON et al.

HILL, Presiding Justice.

This case presents the question of whether the annexation of territory into the corporate limits of a municipality operating an independent public school system also extends the limits of the city school system. We hold that, absent an expression of legislative intent clearly to the contrary or valid agreement between the school systems involved, municipal annexation extends the limits of an independent public school system operated by the municipality.

As of 1945, four public school systems existed, or were authorized, in Upson County, Georgia: the county school system and three independent school systems operated by the City of Thomaston, the City of Silvertown and the Village of East Thomaston. Since that time, by a number of local acts and ordinances, the City of Thomaston has annexed all of the territory which comprised the Silvertown and East Thomaston school systems[1] and a portion of the territory which comprised the Upson County school system.[2] Although the local acts and ordinances did not expressly provide for expansion of the City of Thomaston School District, with each annexation the City of Thomaston Board of Education extended the limits of the City of Thomaston School District so that they remained coterminous with Thomaston's corporate limits and assumed the management and educational responsibilities for the students in the annexed areas.[3]

---

[1] Silvertown and East Thomaston were authorized to operate independent school systems by Ga. L. 1929, p. 1287, and Ga. L. 1923, p. 633, respectively. The charters of the City of Silvertown and the Village of East Thomaston were repealed in 1958 and 1968, respectively. Ga. L. 1958, p. 2242; Ga. L. 1968, p. 2561. The territory which they occupied was annexed into the City of Thomaston by separate acts in those same years. Ga. L. 1958, p. 2264; Ga. L. 1968, p. 2698. Neither the repealing acts nor the annexation acts discuss their effect on the Silvertown or East Thomaston school systems.

[2] Ga. L. 1979, p. 3686; Ga. L. 1975, p. 3666; Ga. L. 1973, p. 3279; Ga. L. 1971, p. 4060; Ga. L. 1970, p. 2502; Ga. L. 1969, p. 2649; Ga. L. 1968, p. 2698; Ga. L. 1967, p. 2944; Ga. L. 1966, p. 2412; Ga. L. 1965, p. 2717; Ga. L. 1964, p. 2517; Ga. L. 1963; p. 2690; Ga. L. 1962, p. 2693; Ga. L. 1960, p. 2698; Ga. L. 1959, p. 2003; Ga. L. 1958, pp. 2264, 2879. Annexations were made pursuant to the authority delegated to municipalities by the General Assembly in Code Ann. § 69-902 (the 100% method).

[3] There are twenty-seven other cities in Georgia that both operate independent school systems and have annexed territory since 1945. The school districts in these cities also have been continually expanded to encompass areas annexed into the cities' corporate limits. The Attorney General of Georgia twice has approved this practice. See Op. Atty. Gen. 1960-61, p. 134; Op. Atty. Gen. 1954-56, p. 168.

One consequence of the expansion of the Thomaston School District has been a decline in the school tax base for Upson County. The charter of the City of Thomaston authorizes the city to levy a school tax "upon all taxable property within the corporate limits of the City of Thomaston." Ga. L. 1933, pp. 1070, 1103. The county operates its school system by taxation of real property located in the Upson County School District. Property annexed into the City of Thomaston is removed from the county school tax digest and thus with each such annexation the city's tax base increases while the county's declines.

The Upson County School District (county) brought suit against the City of Thomaston (city), contending that the city's unilateral annexations and the resulting decreases in the county's school tax base made long-range fiscal planning impossible, reduced the county's bonding capacity and were impoverishing the county school system, without a vote by the citizens adversely affected. The county asserted that the expansion of the city school district violated various provisions of the Constitution of Georgia and sought a declaration that the county school district consists of all areas outside the corporate limits of Thomaston as they existed on the date the 1945 Constitution was adopted. The validity of the annexations to the city itself was conceded. The trial court ruled that the local annexation acts and ordinances were constitutional and that they extended the limits of the city school district by operation of law, and concluded that the county school district consists only of the area outside the present corporate limits of Thomaston. The county appeals these rulings.

1. The county first asserts that the local acts and ordinances annexing territory into the city since 1945 violate Art. III, Sec. VII, Par. IV, of the 1976 Constitution of Georgia (Code Ann. § 2-1304) (and its predecessor in the 1945 Constitution), which provides "[n]o law shall pass which refers to more than one subject matter, or contains matter different from what is expressed in the title thereof."[4] The county argues that the annexation acts refer to more than one subject matter because they both annex property into the

---

[4] The trial court found that the county had failed to argue or present evidence on this contention and ruled that it had been abandoned. The county asserts this ruling was erroneous. However, the trial court also held that all of the annexation acts were valid as against *any* constitutional attack made by the county and, in view of our decision on the merits of this issue, it is unncessary to consider whether abandonment in fact occurred.

city school district and remove property from the county school district, and contain matter different from that expressed in their titles because they result in the removal of territory from the county school district.

No express provision of the acts describes the effect of the annexations on the school districts involved. Thus, they do not violate the provision that no law shall pass which "refers" to more than one subject matter; if anything, they may contain matter different from what is expressed in their titles. However, the shifting of school district boundaries is merely one of the several consequences of annexation, not a "subject matter" contained in the annexation acts. For example, one effect of annexation is to render the annexed territory subject to taxation by the city. An act which provides for annexation but does not provide for taxation of the annexed territory does not contain matter different from what is expressed in the title within the meaning of the constitutional prohibition. Thus, an act which does not specify all of its consequences and effects in its title does not necessarily violate Code Ann. § 2-1304, supra. Such is the case here.

*City of Chamblee v. Village of North Atlanta,* 217 Ga. 517 (123 SE2d 663) (1962), and *Schneider v. City of Folkston,* 207 Ga. 434 (62 SE2d 177) (1950), cited by the county, are inapposite because they involved attempts to amend the charters (laws) of two municipalities by the same annexation act, the title to which referred to the charter of only one municipality. There is no law describing the boundaries of the Upson County School District and hence the cited cases are inapplicable.

2. The county next contends that the local acts repealing the charters of the City of Silvertown and the Village of East Thomaston (see fn. 1, supra) are special laws at variance with Code Ann. § 32-1201, a general law, and hence are violative of the uniformity requirement of the Georgia Constitution (Art. I, Sec. II, Par. VII, of the 1976 Constitution, Code Ann. § 2-207) which requires that "[l]aws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law."

Section 32-1201 provides "[w]henever the citizens of a municipality or independent school district authorized by law to establish and maintain a system of schools by local taxation, in whole or in part, and which is operating a system of public schools independent of the county school system, wish to annul their special school law and become a part of the county school system, they shall present and file with the mayor or chief executive officer of the city a petition signed by one-fourth of the qualified voters of their territory,

and said mayor or chief executive officer shall then within not less than 20 days and not more than 60 days thereafter call an election." The county argues that § 32-1201 requires that an election be held prior to the abolition of an independent school system and, because no election was held prior to the repeal of Silvertown's and East Thomaston's charters, their school systems are either still in existence or the territory which they occupied became a part of the county school system.

Code § 32-1201 was intended to apply where the citizens of a municipality wish to abolish their city school system and become part of the county school system, without abolishing the city. It was not intended to be a prerequisite to abolition of the city itself. Thus, § 32-1201 is not applicable and the abolition of the Silvertown and East Thomaston school districts by repeal of their corporate charters did not violate the uniformity requirement of our Constitution.

3. The county argues that each expansion of the city school district is at variance with Code Ann. § 32-901 and therefore also violative of the uniformity requirement, Code Ann. § 2-207, supra. Section 32-901 provides that "[e]ach and every county shall compose one school district, and shall be confided to the control and management of a county board of education." This Code section, enacted in 1919, Ga. L. 1919, pp. 288, 320, § 76, was not intended to prevent the existence, or growth, of independent school systems. See Ga. L. 1919, pp. 288, 340, § 128. See also Art. VIII, Sec. V, Par. II, of the 1976 Constitution (Code Ann. § 2-5302); Art. VIII, Sec. V, Par. VI, of the 1976 Constitution (Code Ann. § 2-5306); Code Ann. § 32-1101. This enumeration of error is without merit.

4. The county next asserts that the expansion of the city school district violates Art. VIII, Sec. V, Par. VI, of the 1976 Constitution (Code Ann. § 2-5306), which provides "[a]uthority is hereby granted to municipal corporations to maintain existing independent school systems, and support the same as authorized by special or general law, and such existing systems may add thereto colleges. No independent school system shall hereafter be established."

The county would have us interpret the language of this provision to prevent the growth of city school systems. We decline to do so. Section 2-5306 specifically authorizes municipalities who were operating independent school systems as of 1945 to maintain their school systems and only prohibits the "establishment" of new independent school systems hereafter. Records of Constitutional Commission, 1943-44, Vol. 2, p. 82. We do not interpret the word "maintain" as a constitutional prohibition upon the growth of municipal school systems. The prohibition on the "establishment" of new independent school systems is a prohibition on their "creation".

See *Bailey v. County Bd. of Education,* 213 Ga. 308, 311 (99 SE2d 124) (1957); see also *Ga. Public-Service Comm. v. Ga. Power Co.,* 182 Ga. 706 (4) (186 SE 839) (1936). The territorial expansion of an existing city school system by annexation of territory into the corporate limits of the city is not the "creation" or "establishment" of an independent school system in contravention of Code § 2-5306.

5. The county further argues that the expansion of the city school system violates Art. VIII, Sec. V, Par. I, of the 1976 Constitution (Code Ann. § 2-5301) (Ga. L. 1966, p. 1026). Section 2-5301 provides "[a]uthority is granted to county and area boards of education to establish and maintain public schools within their limits. The General Assembly may, by special or local law, provide for consolidation and merger of any two or more county school districts, independent school systems, or any portion or combination thereof, into a single area school district under the control and management of an area board of education. No such consolidation or merger shall become effective until approved by a majority of the voters voting in each of the school districts or school systems affected in a referendum held thereon in each school district or school system being consolidated or merged, provided 51% of the registered voters in each district or system concerned shall vote in such election and provided a majority of said voters voting shall vote in the affirmative. Any area school district so established shall constitute a separate political subdivision of this State, and the school districts or school systems or portions thereof incorporated therein shall stand abolished, and title to all school properties and assets therein shall vest in the area board of education."

The county contends that § 2-5301 sets forth the only method by which any portion of a county school system can be merged into an independent school system and, because the referendum required by § 2-5301 was not held prior to the expansion of the city school district in this case, such expansion is invalid. The city responds by arguing that § 2-5301 does not prescribe the exclusive method by which school systems can be merged. Rather, § 2-5301 merely establishes a procedure by which two school districts or any portions thereof can be combined to create a new entity, an area school district, which is separate and distinct from either of the merged school districts.

We find the city's argument persuasive. Section 2-5301 authorizes consolidation and merger of school districts and systems into area schools. It does not state that it is the exclusive method by which school district lines may be changed and we decline to construe it as such. An area school district is a different legal entity and is managed by different officials than a county or independent school district. See Art. VIII, Sec. V, Par. II, of the 1976 Constitution (Code

Ann. § 2-5302); Art. VIII, Sec. V, Par. V, of the 1976 Constitution (Code Ann. § 2-5305). There is no need for an area school district where there are existing county and city school systems capable of expansion. To interpret § 2-5301 as being exclusive would require that an "area school district" be created whenever any two school districts or portions thereof are consolidated. Thus, an independent school district could never be abolished and have its territory become a part of the county school district. Such a result is contrary to the express language of Code Ann. § 32-1201, supra, and this result was not intended when § 2-5301 was adopted.

6. The county asserts that the trial court erroneously employed the doctrine of argumentum ab inconvenienti to take into consideration the consequences to property owners if the annexation acts were held to be unconstitutional.

The doctrine of argumentum ab inconvenienti was adopted by a majority of this court in *City of Gainesville v. Hall County Bd. of Ed.,* 233 Ga. 77 (209 SE2d 637) (1974), a case also involving the validity of annexations by a municipality. "This seems an appropriate case in which to apply the Latin maxim 'argumentum ab inconvenienti,' as urged by former Chief Justice Almand in his concurring opinion in *Plantation Pipe Line [Co. v. City of Breman,* 227 Ga. 1 (178 SE2d 868) (1970)]. This calls for a consideration of the inconvenience which would result to property owners if such [annexation] ordinances were declared invalid at this point in time." *City of Gainesville v. Hall County Bd. of Ed.,* supra, 233 Ga. at 81. See also *Gormley v. Taylor,* 44 Ga. 76, 85-86 (1871).

Although we have held that the doctrine of argumentum ab inconvenienti is not applicable to clear and plain constitutional violations, *Calhoun County v. Early County,* 205 Ga. 169 (3) (52 SE2d 854) (1949), we said there that the doctrine will be applied when the constitutional question is close and doubtful (205 Ga. at 175). Hence the trial court did not err in utilizing the doctrine and considering the consequences.

7. The county's final argument is that the extensions of the city school district limits are void because they were made without affirmative authority. This brings us to the overriding question in this case: Does the annexation of territory into the corporate limits of a municipality operating an independent school system also extend the limits of the city school system? The City of Thomaston, of course, had the necessary authority to annex the territory involved (see footnotes 1 and 2).

As evidenced by its complaint, the primary concern of the county in bringing this action was the shrinkage in its school tax base caused by the city's annexations. However, as we have previously

stated, "the fact that such annexations result in one taxing political entity gaining or losing taxable property provides no basis to void annexations otherwise valid." *City of Gainesville v. Hall County Bd. of Ed.,* supra, 233 Ga. at 80.

A question similar to that presented here was involved in *Board of Ed. of Fulton County v. Board of Ed. of College Park,* 147 Ga. 776 (95 SE 684) (1918). In that case the General Assembly had passed an act creating the Board of Education of College Park and authorizing a public school system within the city's limits. A portion of the city was located in Fulton County and the school lands in that area had been purchased by and were under the control of the Board of Education of Fulton County. In upholding an injunction prohibiting the Fulton County Board of Education from interfering with the College Park Board of Education's use, control and title to the school property located in Fulton County, this court stated "[w]here a municipality is authorized by the General Assembly to create a public-school system coextensive with its corporate limits, a part or all of which territory has theretofore been included within the system of public schools operated by the county, forming a portion of a school district, the municipality succeeds to the control of educational matters and to the title to the real estate held as public-school property within its territory. . . ." *Board of Ed. of Fulton County v. Board of Ed. of College Park,* supra, 147 Ga. at 779. (The College Park school system was created prior to the adoption of the prohibition on creation of new independent school systems, Code Ann. § 2-5306, supra, Division 4.)

In direct reliance on the *College Park* case, the Attorney General of Georgia issued two opinions, dated April 13, 1954, and August 24, 1961, stating his interpretation of the law to be that "[w]here the corporate limits of a municipality are extended so as to take in an area where a county school is located, the school authorities of the independent municipal system succeed to the control of all educational matters in such area and also to title to real estate held as public school property, in the absence of expressed intent on the part of the Legislature or in the absence of an agreement between the interested parties." Op. Atty. Gen. 1960-61, p. 135-36 (quoting Op. Atty. Gen. 1954-56, p. 168). State School Superintendent Dr. Charles McDaniel testified in the case before us that the Georgia Department of Education was presently operating in accordance with the Attorney General's opinions and had been so operating during his twenty-five years of personal knowledge.[5]

---

[5] The evidence also showed that the State Department of Audits removes annexed

The county argues that even though *College Park* may have correctly stated the law as it then existed, a different result is required after the enactment of the 1945 Georgia Constitution and, consequently, the opinions of the Attorney General are incorrect statements of present law. The county contends that Art. VIII, Sec. V, Par. II, of the 1976 Constitution (Code Ann. § 2-5302) (formerly Art. VIII, Sec. V, Par. I, of the 1945 Constitution, Code Ann. § 2-6801) elevates county school districts to a "constitutional status" over and above independent school districts and, therefore, county school district boundaries can only be decreased in a manner specifically authorized by the Constitution. Because the Constitution itself makes no provision for annexations of territory located within a county school district by a municipality operating an independent school system, the county reasons that such annexations cannot constitutionally decrease the county school district.

The fallacy with the county's argument is evident from the language of § 2-5302: "[E]ach county, *exclusive of any independent school system now in existence in a county,* shall compose one school district and shall be confined to the control and management of a County Board of Education." (Emphasis supplied.) This provision does not give county school districts constitutional status superior to existing independent school systems.

Over the years since the 1945 Constitution was proposed and ratified, none of the three branches of government in this state has perceived that § 2-5302 or any other provision of the 1945 or 1976 Constitutions alters the result reached in the *College Park* case. On the contrary, all three branches have either implicitly or explicitly assumed that *College Park* continued to be controlling authority.[6] Although not binding on the courts, a long-standing and unquestioned interpretation of the Constitution by the General Assembly or the Attorney General constitutes a "weighty argument in favor of such interpretation. . . ." *Epping v. City of Columbus,* 117 Ga. 263 (7) (43 SE 803) (1903), overruled on other grounds, *Harrell v. Town of Whigham,* 141 Ga. 322, 326 (80 SE 1010) (1913).

---

territory from the county school tax digest.

[6] The General Assembly has recognized that municipal annexations extend the city's school system in at least two instances: First when it removed the school district barrier to municipal annexations in Ga. L. 1971, p. 399, following *Plantation Pipe Line Co. v. City of Bremen,* supra; again when after authorizing annexation by ordinance in 1962 (Ga. L. 1962, p. 119; the 100% method) and 1966 (Ga. L. 1966, p. 409; the 60% method), it revised the revenue code in 1978 and expressly permitted municipalities operating independent school systems to levy a school tax "upon all taxable property *within the limits of the municipality."* (Emphasis supplied.) Code

We think the Attorney General has correctly stated the law and we hold that, in the absence of an expression of legislative intent clearly to the contrary or a valid agreement between the school systems involved, the annexation of territory into the corporate limits of a municipality operating an independent school system also extends the limits of the city school system, so that the limits of the city school district remain coterminous with the city's corporate limits. See *Board of Ed. of Fulton County v. Board of Ed. of College Park,* supra; *City of Gainesville v. Hall County Bd. of Ed.,* supra. In doing so, we decline to follow Thomas v. Spragens, 213 SW2d 452 (308 Ky. 97) (1948), which reached the opposite result. If municipal annexation poses undue hardships on county school systems, then the General Assembly can provide solutions over and above those already provided (e.g., Code Ann. § 2-5301, supra, Division 5).

*Judgment affirmed. Jordan, C. J., Marshall, Clarke, Smith and Gregory, JJ., concur.*

DECIDED SEPTEMBER 8, 1981.

*Bridges, Connell & Snow, Richard T. Bridges,* for appellants.
*Adams, Barfield & Dunaway, Ronald A. Barfield,* for appellees.

Ann. § 91A-1706(a), Ga. L. 1978, pp. 309, 479. Similarly, this court implicitly recognized that municipal annexations of territory located within county school districts removes the annexed territory from the county school districts in *City of Gainesville v. Hall County Bd. of Education,* supra; and *Plantation Pipe Line Co. v. City of Bremen,* supra, although neither case involved the same constitutional attacks which the county raises here. And, as previously noted, the Attorney General directly based two opinions on the authority of *Board of Ed. of Fulton County v. Board of Ed. of College Park,* supra, and the Department of Education and Department of Audits have operated in accordance therewith.